**HERSHEY FOODS CORPORATION**

v.

**HERSHEY CREAMERY COMPANY, Appellant.**

**HERSHEY CREAMERY COMPANY, Counter–Claimant,**

v.

**HERSHEY FOODS CORPORATION, Counter–Defendant.**

No. 90–5892.

United States Court of Appeals, Third Circuit.

Argued March 4, 1991.

Decided Oct. 3, 1991.

Herbert F. Schwartz (argued), Susan Progoff, Mark D. Engelmann, Vicki S. Veenker, Fish & Neave, New York City, R. Stephen Shibla, Rhoads & Sinon, Harrisburg, Pa., for appellant, Hershey Creamery Co.

David E. Lehman (argued), Rod J. Pera, McNees, Wallace & Nurick, Harrisburg, Pa., Nims, Howes, Collison & Isner, New York City, for appellee, Hershey Foods Corp.

Before BECKER, NYGAARD and HIGGINBOTHAM, Circuit Judges.

OPINION OF THE COURT

BECKER, Circuit Judge.

This appeal is a tale of two courts. Appellant Hershey Creamery Company ("Hershey Creamery") and appellee Hershey Foods Corporation ("Hershey Foods") are locked in a struggle for the perceived advantage of litigating rights in the HERSHEY'S trademark in their preferred federal district courts. Both parties' predecessors began producing and marketing food products in Hershey, Pennsylvania, around the turn of the century; they have been feuding intermittently over the rights to the mark HERSHEY'S for seventy years. In 1967, in the previous round in the dispute, Hershey Creamery and Hershey

Foods's predecessor, the Hershey Chocolate Company ("Hershey Chocolate"), settled, and, pursuant to the parties' agreement, the District Court for the Southern District of New York issued a consent judgment.

In the current round, Hershey Foods filed suit in the District Court for the Middle District of Pennsylvania,[1] at which point Hershey Creamery sought from the Southern District of New York an order construing and enforcing the 1967 consent judgment. At the behest of Hershey Foods, the Middle District of Pennsylvania enjoined Hershey Creamery from further proceedings in the Southern District of New York. Hershey Creamery has filed this interlocutory appeal from the Middle District of Pennsylvania's order.

On the merits, the appeal presents several intricate and interesting questions: (1) whether the Middle District of Pennsylvania improperly deprived its sister court in New York of the ability to hear a motion to enforce its own judgment; (2) whether the consent judgment in the New York action is broad enough to encompass the relief sought by Hershey Foods in the Pennsylvania actions (or whether it was, except for provisions not relevant here, merely a nonsubstantive agreement to dismiss); and (3) whether the Pennsylvania or New York action was first filed. At ultimate issue in this appeal is whether the Middle District of Pennsylvania or the Southern District of New York will decide whether the parties' 1967 settlement agreement and consent judgment preclude the substantive relief Hershey Foods seeks in this action.

The case thus presents us with a procedural nightmare. To complicate the picture further, there is also a difficult threshold question of appellate jurisdiction: whether an interlocutory order enjoining a party from prosecuting a related action is an immediately appealable "injunction" under 28 U.S.C. § 1292(a)(1) (1988). We conclude that the injunctive order before us is not

appealable under the teachings of *Cohen v. Board of Trustees of the University of Medicine & Dentistry of New Jersey,* 867 F.2d 1455 (3d Cir.1989) (in banc), because it is not designed to accord or protect some of the substantive relief sought by the claimant. Instead, the order appealed from is akin to an order denying a change in venue, which is not appealable interlocutorily. Because the Middle District of Pennsylvania's order is not an appealable "injunction" as that term is defined in *Cohen,* we will not reach the merits and will dismiss the appeal for lack of appellate jurisdiction.

## I. FACTS AND PROCEDURAL HISTORY

In about 1894, Hershey Chocolate began manufacturing and selling various food and milk products throughout the United States as HERSHEY'S, which it first registered with the United States Patent and Trademark Office in 1906. Over time Hershey Foods and its predecessor have marketed under the mark HERSHEY'S candy, chocolate, cocoa, chocolate milk, chocolate syrup, and refrigerated puddings. In about 1910, the Hershey brothers,[2] who later founded Hershey Creamery, began manufacturing and selling ice cream products, using the same HERSHEY'S trademark.

In 1921, Hershey Chocolate filed the first lawsuit between these parties in the Middle District of Pennsylvania. Five years later, the district court issued a decree enjoining the Hershey brothers from using the trademark HERSHEY'S in connection with the manufacture, advertisement, distribution, or sale of, among other things, chocolate, cocoa, chocolate confections, and chocolate or cocoa products. In 1958, however, Hershey Creamery registered the HERSHEY'S trademark for ice cream and butter and received U.S. Trademark Registration 665,835.

In 1966, Hershey Creamery filed suit in the Southern District of New York. In

---

1. We will hereafter refer to the District Courts for the Middle District of Pennsylvania and the Southern District of New York as simply the "Middle District of Pennsylvania" and the "Southern District of New York."

2. The Hershey brothers were relatives of the founder of Hershey Foods.

that year, Hershey Creamery had learned that Hershey Chocolate was planning to make a foray into the ice cream business by licensing Consolidated Foods Corporation to use the HERSHEY'S trademark on ice cream bars coated with HERSHEY'S chocolate. Hershey Creamery's New York complaint charged Hershey Chocolate and Consolidated Foods Corporation with trademark infringement, unfair competition, false designation of origin, false descriptions, and false representations. In response, Hershey Chocolate filed a counterclaim challenging the validity of Hershey Creamery's trademark registration for ice cream and butter. Hershey Chocolate alleged that Hershey Creamery obtained U.S. Trademark Registration 665,835 through fraud and sought cancellation of the registration.

The parties amicably resolved the New York action in 1967. As part of the settlement agreement, Hershey Creamery agreed to drop its claims against Hershey Chocolate and to allow Hershey Chocolate to license its HERSHEY'S trademark for use in connection with ice cream bars coated with HERSHEY'S chocolate, subject to various restrictions on the manner in which the mark is displayed on the packaging. Hershey Creamery further agreed to amend U.S. Trademark Registration 665,835 by deleting butter from the goods covered and by correcting an error in the date of first use of the mark. In return, Hershey Chocolate agreed not to "attack the validity of, or oppose any federal or state trademark application or registration of Hershey Creamery directed to the trademark 'HERSHEY'S' for ice cream." Based on the parties' settlement agreement, the Southern District of New York entered a Final Judgment on Consent dismissing Hershey Creamery's claims and Hershey Chocolate's counterclaim with prejudice and ordering the United States Patent and Trademark Office to rectify U.S. Trademark

Registration 665,835 in the manner described above.

Shortly after the resolution of the New York action, Hershey Creamery obtained an additional trademark registration of HERSHEY'S for various ice cream products, namely "ice cream, ice milk, sherbet, water ice, and frozen confections in which ice cream, ice milk, sherbet or water ice is a component." Over the next twenty-two years, the production and marketing efforts of the parties changed in response to the vagaries of market demand. In 1989, Hershey Creamery began to sell and advertise frozen yogurt in containers bearing the mark HERSHEY'S and filed an application in the United States Patent and Trademark Office to register the trademark for that product. When Hershey Foods became aware of the application to register HERSHEY'S as a trademark for frozen yogurt, it advised Hershey Creamery that Hershey Creamery's acts violated Hershey Foods's rights in the trademark and requested that Hershey Creamery discontinue use of HERSHEY'S on frozen yogurt. Although Hershey Creamery withdrew its pending application for registration of the mark for frozen yogurt, it refused to discontinue use of HERSHEY'S in connection with the advertisement and sale of frozen yogurt.[3]

In May of 1990, Hershey Foods brought the present suit against Hershey Creamery in the Middle District of Pennsylvania, seeking an injunction prohibiting Hershey Creamery's use of the HERSHEY'S trademark for frozen yogurt. Hershey Foods also sought to enjoin Hershey Creamery from expanding its use of the HERSHEY'S mark on ice cream outside of what it claims is Hershey Creamery's "traditional thirteen-state trading area," and to require Hershey Creamery to use a disclaimer on all products that it sells or distributes under the HERSHEY'S trademark.

Hershey Creamery, believing that this relief, if granted, would undercut its rights

---

**3.** At about the same time, Hershey Foods retained a professor of law and sociology at the University of Chicago to assess the level of potential confusion engendered by Hershey Creamery's use of HERSHEY'S for frozen yogurt and ice cream. This putative consumer research expert found that 76.7% of 223 purchasers of frozen yogurt and 88.6% of 228 purchasers of ice cream in the thirteen states where Hershey Creamery trades believed that HERSHEY'S frozen yogurt and ice cream were the products of Hershey Foods.

under the 1967 consent judgment, filed in the Southern District of New York a "motion for order construing and enforcing consent judgment" under the 1966 docket number of that court's action. Hershey Creamery also moved in the Middle District of Pennsylvania to transfer the Pennsylvania action to the Southern District of New York pursuant to 28 U.S.C. § 1404(a) (1988) or, in the alternative, to stay the Pennsylvania action pending the resolution of its motion in the Southern District of New York. While these motions were pending, Hershey Foods moved in the Middle District of Pennsylvania for an order enjoining Hershey Creamery from prosecuting its motion in the Southern District of New York during the pendency of the Pennsylvania action.

Before the Southern District of New York was able to rule on the substance of Hershey Creamery's motion, the Middle District of Pennsylvania denied Hershey Creamery's motion to transfer and granted Hershey Foods's motion to enjoin Hershey Creamery from proceeding with its motion in the New York action pending final adjudication of the Pennsylvania action.[4] Upon receiving notice of the Middle District of Pennsylvania's order, the Southern District of New York placed Hershey Creamery's motion on its suspense calendar.

Hershey Creamery filed a timely notice of appeal from the Middle District of Pennsylvania's order enjoining it from proceeding with its motion in the New York action. Hershey Foods thereupon moved to dismiss this appeal for lack of appellate jurisdiction.

---

**4.** The latter of the court's two orders read as follows:

[U]pon consideration of the motion of plaintiff, Hershey Foods Corporation, for an order enjoining defendant Hershey Creamery Company from prosecution of its collateral proceeding styled as a "Motion for Order Construing and Enforcing Consent Judgment," under the caption *Hershey Creamery Company v. Hershey Chocolate Corporation et al.,* filed June 21, 1990, to Civil Action No. 66–3915 in the United States District Court for the Southern District of New York, it is hereby ORDERED that said motion be, and hereby is,

## II. APPELLATE JURISDICTION

### A. *The Parties' Contentions*

Hershey Creamery does not contend that the appeal is supported by 28 U.S.C. §§ 1291 or 1292(b) (1988). Hershey Foods's motion to dismiss the appeal is therefore grounded on its contention that the only arguably relevant provision conferring appellate jurisdiction, 28 U.S.C. § 1292(a)(1) (1988), is inapplicable. In support of its position, Hershey Foods argues that: (1) the district court's order is not an injunction of the type contemplated by section 1292(a)(1) because it does not relate to the relief ultimately sought; and (2) the order appealed from is not "interlocutory" because it did not touch upon or tentatively settle any of the merits of the parties' claims.[5]

Hershey Creamery responds that the Middle District of Pennsylvania's order expressly *enjoins* it from proceeding with its motion in the New York action for an order construing and enforcing the 1967 Consent Judgment. Such an injunction, Hershey Creamery contends, falls squarely within the literal terms of section 1292(a)(1). To buttress its literal reading, Hershey Creamery relies on a 1966 per curiam decision of this court, *Maryland v. Atlantic Aviation Corp.,* 361 F.2d 873 (3d Cir.) (per curiam), *cert. denied,* 385 U.S. 931, 87 S.Ct. 290, 17 L.Ed.2d 212 (1966). There we essentially held, albeit without discussion, that an order directing a party to abstain from all further proceedings in an identical suit is an appealable interlocutory injunction. Hershey Creamery also relies on a Second Circuit decision of the same vintage, *National Equipment Rental, Ltd. v. Fowler,*

---

GRANTED, and the defendant is enjoined from prosecuting the above proceeding in the Southern District of New York pending final adjudication of this action.

**5.** Section 1292(a)(1) provides:

(a) ... [t]he courts of appeals shall have jurisdiction of appeals from:
(1) Interlocutory orders of the district courts of the United States ... granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions, except where a direct review may be had in the Supreme Court.

287 F.2d 43 (2d Cir.1961), which we cited in *Atlantic Aviation.* There the Second Circuit similarly concluded that an order enjoining a party from prosecuting a related action is immediately appealable under 28 U.S.C. § 1292(a)(1).

### B. *The Case Law*

At first blush, Hershey Creamery's literal reading of section 1292(a)(1), which is grounded in what appears to be binding authority, seems compelling. Still, we are constrained to reject Hershey Creamery's construction of section 1292(a)(1), and the precedents on which that construction relies, because subsequent decisions of the Supreme Court and this court sitting *in banc* have superseded them.

Section 1292(a)(1) "was intended to carve out only a limited exception to the final-judgment rule." *Carson v. American Brands, Inc.,* 450 U.S. 79, 84, 101 S.Ct. 993, 996, 67 L.Ed.2d 59 (1981). As such, it constitutes a narrow exception to the "long-established federal policy against piecemeal appeals." *Gardner v. Westinghouse Broadcasting Co.,* 437 U.S. 478, 480, 98 S.Ct. 2451, 2453, 57 L.Ed.2d 364 (1978). The Supreme Court accordingly has admonished courts to "approach this statute somewhat gingerly lest a floodgate be opened that brings into the exception many pretrial orders." *Switzerland Cheese Ass'n v. E. Horne's Market, Inc.,* 385 U.S. 23, 24, 87 S.Ct. 193, 195, 17 L.Ed.2d 23 (1966). Our jurisprudence is, of course, in accord. In *Stateside Machinery Co. v. Alperin,* 526 F.2d 480, 482 (3d Cir.1975), we cautioned against employing an overly literal reading of section 1292(a)(1):

> [L]iteralism has not been the approved canon of construction for the interlocutory appeals statute. Rather, the courts have looked to the presumed purpose of the ... exception to the historical rule prohibiting appeals from non-final judgments.... *The literal characterization of an order as an injunction only begins the inquiry into appealability.*

(footnotes omitted) (emphasis added). And we too have held that section 1292(a)(1) should be construed narrowly so as not to swallow the final-judgment rule. *See Metex Corp. v. ACS Indus.,* 748 F.2d 150, 154 (3d Cir.1984) (following *Carson* in noting that section 1292(a)(1) allows jurisdiction over "only a relatively narrow range of ... orders" whose consequences may be serious, perhaps irreparable).

As the above cases, all of which were decided after *Atlantic Aviation,* make clear, section 1292(a)(1) requires that we do more than scan the district court's order for the word "injunction" or some derivative thereof. We instead must assure ourselves that it would be consonant with the policies underlying section 1292(a)(1) to allow an immediate appeal, even though the order at issue purports to be an interlocutory injunction. The most comprehensive and authoritative exposition of these policies is found in *Cohen v. Board of Trustees of the University of Medicine & Dentistry of New Jersey,* 867 F.2d 1455 (3d Cir.1989) (in banc), wherein we endeavored to define which orders involve "injunctions" under section 1292(a)(1).

In *Cohen,* a medical school professor, relying on 42 U.S.C. § 1983 and on state law, sued the university and certain members of its administration, claiming that they had violated her constitutional and common-law rights by denying her tenure. 867 F.2d at 1456. At issue on appeal was an interlocutory order of the district court requiring the university to reinstate the plaintiff to her position and to "retain her until such time as she is removed for cause in the same manner that tenured faculty members are removable." *Id.* at 1468. In attempting to define injunction, for purposes of determining whether the order was an injunction appealable under section 1292(a)(1), we began with a negative definition: "Not every order which may be enforced against a party by civil contempt is such an injunction." *Id.* at 1464. To underscore this point, we listed several types of orders that have been held not to fall under section 1292(a)(1), notwithstanding that they have the effect of granting or denying injunctive relief.[6] We stated:

---

**6.** For example, an order against a party solely to enable another party to gain discovery, though

These exceptions to the reach of section 1292(a)(1) serve, negatively, to define injunctions for purposes of that section. *What they have in common is that in each case the order in question, while significant, does not either grant or deny the ultimate relief sought by the claimant.*

*Id.* (emphasis added). Reasoning from these examples, we concluded that "injunctions" may be defined affirmatively as:

Orders that are directed to a party, enforceable by contempt, and *designed to accord or protect "some or all of the substantive relief sought by a claimant"* in more than a [temporary] fashion.

*Id.* at 1465 n. 9 (quoting 16 Wright, Miller, Cooper & Gressman, *Federal Practice & Procedure* § 3922, at 29 (1977) (emphasis added)).

In support of this definition of "injunctions," we reasoned from the congressional purpose in enacting section 1292(a)(1). First, we contrasted actions at law with actions in equity. "Actions at law for the recovery of money," we explained, "can only be enforced by execution after final judgment," *id.* at 1465, whereas equity "acts on the person, who can be held in contempt for noncompliance," *id.* As a result, we pointed out, an interlocutory injunction that adjudicates some of the relief sought in the complaint can be enforced *immediately* via contempt. We thus concluded that Congress, recognizing that "serious consequences might result from compliance with injunctive orders during the pendency of litigation," created section 1292(a)(1) as a narrow exception to the final judgment rule. *Id.* Keeping this purpose in mind, we held that, in order to be an

"injunction" for purposes of section 1292(a)(1), the order must grant part of the relief requested by the claimant and must be immediately enforceable by contempt.

The requirement that the order must relate to the relief ultimately sought by the claimant in order to be appealable under section 1292(a)(1) is found in other cases such as *Switzerland Cheese Ass'n v. E. Horne's Market, Inc.,* 385 U.S. 23, 87 S.Ct. 193, 17 L.Ed.2d 23 (1966), which was decided more than five months after *Atlantic Aviation.* The plaintiffs in *Switzerland Cheese* moved for a summary judgment granting a permanent injunction, but the district court, finding a genuine issue of material fact, denied the motion. 385 U.S. at 23–24, 87 S.Ct. at 193–194. The plaintiffs then appealed, contending that the order was "an 'interlocutory' one 'refusing' an injunction within the meaning of § 1292(a)(1)." *Id.* at 24, 87 S.Ct. at 194. The Supreme Court rejected this construction of section 1292(a)(1):

[T]he denial of a motion for a summary judgment because of unresolved issues of fact does not settle or even tentatively decide any thing about the merits of the claim. It is strictly a pretrial order that decides only one thing—that the case should go to trial. *Orders that in no way touch on the merits of the claim but only relate to pretrial procedures are not in our view "interlocutory [injunctions]" within the meaning of § 1292(a)(1).* We see no other way to protect the integrity of the congressional policy against piecemeal appeals.

*Id.* at 25, 87 S.Ct. at 195 (footnote omitted) (emphasis added).[7]

---

enforceable by civil contempt, does not fall under section 1292(a)(1).... So too, an order imposing the sanction of preclusion of evidence for failure to make discovery, does not fall under section 1292(a)(1), even though it makes the likelihood of issuance of an injunction more or less likely.... Moreover, an order staying or refusing to stay an action for equitable relief does not fall under section 1292(a)(1), even though it postpones or accelerates resolution of an action seeking injunctive relief. *Gulfstream Aerospace Corp. v. Mayacamas Corp.,* 485 U.S. 271, [279,] 108 S.Ct. 1133, 1143, 99 L.Ed.2d 296 (1988); *Switzerland Cheese Association v. E.*

*Horne's Market,* 385 U.S. 23, 25, 87 S.Ct. 193, 195, 17 L.Ed.2d 23 (1966). Finally, orders attaching security for a judgment ultimately to be rendered have been held not to fall under section 1292(a)(1), even though such orders have a significant impact on the parties whose property is affected....

*Cohen,* 867 F.2d at 1464 (some citations omitted).

7.  *See also Rodgers v. United States Steel Corp.,* 541 F.2d 365, 373 (3d Cir.1976):

An order incidental to a pending action that does not grant all or part of the ultimate

Similarly, the Second Circuit in *International Products Corp. v. Koons*, 325 F.2d 403 (2d Cir.1963), held that an order sealing a deposition and enjoining the defendants and others from "publishing or disclosing to any third party any of the testimony, documents or writing contained or referred to" in the deposition, *id.* at 404 n. 1, is not appealable under section 1292(a)(1). Judge Friendly wrote:

> We think it better ... to continue to read § 1292(a)(1) as relating to injunctions which give or aid in giving some or all of the substantive relief sought by the complaint ... and not as including restraints or directions in orders concerning the conduct of parties or their counsel, unrelated to the substantive issues in the action, while awaiting trial.

*Id.* at 406 (footnote omitted). A broader construction of section 1292(a)(1), Judge Friendly submitted, "would seem quite inconsistent with the federal policy of finality." *Id.* at 407.

### C. *Discussion*

In light of the recent case law, we believe that Hershey Creamery's attempt to fit its appeal into section 1292(a)(1) falls short of the mark. To begin with, in *Alperin, see supra* at 1276, we admonished against applying the sort of literal reading of section 1292(a)(1) that Hershey Creamery advances here. More importantly, however, we believe that the precedential value of our decision in *Atlantic Aviation*—which is the centerpiece of Hershey Creamery's argument—has been eroded by the tide of subsequent Supreme Court and consequent Third Circuit opinions emphasizing that section 1292(a)(1) must be construed narrowly. Most notable among this group is our *in banc* decision in *Cohen,* whose reasoning cannot be reconciled with—and thus effectively overrules—our earlier holding in *Atlantic Aviation.* To be appealable under section 1292(a)(1), therefore, the district court's order must satisfy the restrictive requisites laid down in *Cohen.* In our view, the order here does not.

Simply stated, the district court's order enjoining Hershey Creamery from proceeding with its pending motion in the Southern District of New York does not grant part of the substantive relief requested by Hershey Foods. As mentioned above, Hershey Foods's complaint in the Pennsylvania action seeks an injunction: (1) prohibiting Hershey Creamery's use of the HERSHEY'S trademark outside of Hershey Creamery's so-called "traditional thirteen-state trading area;" (2) requiring Hershey Creamery to place a disclaimer on its products disavowing any association with Hershey Foods; and (3) prohibiting Hershey Creamery's use of the HERSHEY'S mark on frozen yogurt. If, for example, the district court's injunction had directed Hershey Creamery during the pendency of this lawsuit not to use the HERSHEY'S trademark on frozen yogurt or not to expand its use of the mark beyond its "traditional trading area," it would have granted part of the ultimate relief sought by Hershey Foods, and therefore would have been appealable under section 1292(a)(1).

In contrast, the district court's injunction in this case resolves only one procedural issue—that the Middle District of Pennsylvania, not the Southern District of New York, will decide whether the parties' 1967 settlement agreement and consent judgment preclude the substantive relief sought by Hershey Foods in this action. Viewed in this light, the order prohibiting Hershey Creamery from prosecuting its motion in the Southern District of New York is ancillary to the court's denial of Hershey Creamery's motion to transfer the instant action to that forum. Both orders embody the district court's venue decision: that this case will proceed in the Middle District of Pennsylvania. It is well-settled that orders granting or denying a change in venue are not proper subjects for interlocutory appeals. *See Nascone v. Spudnuts, Inc.*, 735 F.2d 763, 764 (3d Cir.1984).

At this juncture, we intimate no view of the propriety of the district court's order enjoining Hershey Creamery from proceed-

---

injunctive relief sought by the claimant, that is unrelated to the substantive issues in the

action and that merely continues the case is not appealable under section 1292(a)(1).

ing in the Southern District of New York. We simply observe that the court's injunction is not "designed to accord or protect 'some or all of the substantive relief sought by [Hershey Foods in its] ... complaint.'" *Cohen,* 867 F.2d at 1465 n. 9 (citation omitted). Because the Middle District of Pennsylvania's order does not grant part of the relief requested by Hershey Foods, it does not qualify as an appealable "injunction" under our *in banc* decision in *Cohen.* Nor does it satisfy the test set out in *Switzerland Cheese,* 385 U.S. at 25, 87 S.Ct. at 195 ("Orders that in no way touch on the merits of the claim but only relate to pretrial procedures are not in our view 'interlocutory [injunctions]' within the meaning of § 1292(a)(1).").

The district court's order enjoining Hershey Creamery from prosecuting its "motion for order construing and enforcing consent judgment" in the Southern District of New York pending final adjudication of this action is better viewed as a garden variety pretrial order relating primarily to venue. Orders that focus on such procedural issues and do not grant or deny part of the substantive relief sought by the claimant are not immediately appealable under section 1292(a)(1). We will therefore dismiss Hershey Creamery's appeal for lack of appellate jurisdiction.