

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-9-2006

# ADAPT v. Phila Housing Auth

Precedential or Non-Precedential: Precedential

Docket No. 04-4502

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"ADAPT v. Phila Housing Auth" (2006). *2006 Decisions.* Paper 1683.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/1683

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**PRECEDENTIAL**


UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 04-4502, 04-4734, 05-1692, 05-1727, 05-2079, 05-2080
_____


ADAPT OF PHILADELPHIA, LIBERTY RESOURCES,
INC., MARIE WATSON, MARSHALL WATSON, and
DIANE HUGHES


vs.


PHILADELPHIA HOUSING AUTHORITY, CARL
GREENE, in his official capacity as the Executive Director of
the Philadelphia Housing Authority,
Appellants Nos. 04-4734, 05-1727, 05-2080


and


RESIDENT ADVISORY BOARD, INC. (Intervenor in D.C.)
Appellant Nos. 04-4502, 05-1692, 05-2079


_____


On Appeal from the United States District Court
for the Eastern District of Pennsylvania
District Court No. 98-cv-04609
District Judge: Honorable Harvey Bartle, III

_____

Argued: November 7, 2005
_____

Before: ROTH, FUENTES, and GARTH, *Circuit Judges*

(Filed: January 9, 2006)


_____

OPINION OF THE COURT
_____

Brian P. Flaherty, Esquire (Argued)
Abbe F. Fletman, Esquire
Andrew C. Curley, Esquire
WOLF BLOCK SCHORR & SOLIS-COHEN LLP
1650 Arch Street, 22nd Floor
Philadelphia, PA 19103

Attorneys for Appellants Philadelphia Housing Authority
and Carl R. Greene, in his official capacity as the Executive
Director
of the Philadelphia Housing Authority

Arlene O. Freiman, Esquire (Argued)
KOLBER & FREIMAN
1530 Chestnut Street, Suite 604

Philadelphia, PA 19102

Attorney for Appellant Resident Advisory Board

Stephen F. Gold, Esquire (Argued)
125 South 9th Street, Suite 700
Philadelphia, PA 19107

David A. Kahne, Esquire
2711 Main Street, Suite 105
P.O. Box 66386
Houston, TX 77266

Attorneys for Appellees ADAPT of Philadelphia
and Liberty Resources, Inc.

GARTH, *Circuit Judge*.

These six consolidated appeals seek our review of certain discovery orders entered by the District Court during the course of litigation involving the statutory obligation of the Pennsylvania Housing Authority ("PHA") to furnish housing for disabled tenants. Pursuant to the terms of a Settlement Agreement and Release (the "Agreement"), which purportedly resolved the litigation, PHA was obliged to construct a number of public housing units with accessibility features for the mobility impaired and to lease these units to the appropriate persons having the requisite disability.

The discovery orders, entered in connection with motions

to enforce the Agreement, compelled PHA to disclose medical history information of tenants occupying the public housing units designed for persons with mobility impairments. Disability advocacy groups, identified below, sought medical information as to each tenant to confirm that PHA had complied with the terms of the Agreement. PHA resisted furnishing this information based on the terms of the Agreement and the privacy interests of the affected tenants.

Unable to resolve these discovery matters amicably, the parties filed various discovery motions with the District Court, seeking either to compel or to prevent discovery. In three separate orders, the District Court, after weighing the factors set out in *United States v. Westinghouse Elec. Corp.,* 638 F.2d 570 (3d Cir. 1980), essentially required PHA to divulge and turn over the requested medical information, in both redacted and unredacted form, but under seal and in accordance with specific confidentiality terms. Appeals were filed after the entry of each order.

Thereafter, on August 29, 2005, the District Court entered its final order denying all motions to enforce the Agreement. No appeal has been taken from this final order.

The threshold question we must answer is whether entry of final judgment – the District Court's August 29, 2005 order – now provides appellate jurisdiction over these otherwise premature appeals from interlocutory discovery orders. Concluding that the orders from which the instant appeals were taken are not final and appealable orders, notwithstanding the subsequent entry of final judgment, we dismiss the appeals for

want of appellate jurisdiction.

## I.

## A.

ADAPT of Philadelphia, Liberty Resources, Inc., and several individuals (collectively, "ADAPT") commenced this action against the Philadelphia Housing Authority and its executive director Carl Greene (collectively, "PHA"), alleging that PHA had not made available a sufficient number of subsidized accessible housing units for persons with mobility impairments, in violation of § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, and the implementing regulations thereunder.[1] ADAPT prevailed after a bench trial in the United States District Court for the Eastern District of Pennsylvania. PHA appealed, but before this Court heard the matter, the parties entered into the Agreement, thereby resolving all outstanding issues in the litigation. The District Court approved the Agreement on May 20, 2002, retaining jurisdiction to enforce the terms of the Agreement.

Paragraph B of the Agreement required PHA to "create 248 accessible public housing rental units," with 124 to be ready

---

[1] Liberty Resources, Inc. is a federally funded social service and advocacy non-profit corporation that is mandated, pursuant to the Rehabilitation Act of 1973, 29 U.S.C. § 796f-4, to provide services and 'systems advocacy' for people with disabilities. ADAPT of Philadelphia is an organization that advocates on behalf of individuals with disabilities.

for occupancy no later than December 31, 2003 and the remaining units to be ready for occupancy no later than December 31, 2005. These units were required "in addition to units PHA is otherwise required to make accessible in accordance with 24 C.F.R. Part 8 (including its 5% accessibility requirements)."[2]

Paragraph C of the Agreement required PHA to "take reasonable non-discriminatory steps to maximize the utilization of [the units created under Paragraph B] by eligible households that include an individual whose disability requires the accessibility features of the particular unit, in accordance with 24 C.F.R. § 8.27." Section 8.27 requires owners or managers of multifamily housing projects to inform eligible individuals of the availability of accessible units and to give priority to disabled applicants. *See* 28 C.F.R. § 8.27.

Paragraph P of the Agreement, entitled "Reporting and Monitoring," required PHA to quarterly "provide [ADAPT] with a report . . . regarding the implementation and status of Paragraph B, Accessible Units." The Agreement also granted both PHA and ADAPT the right to seek judicial relief by motion to the District Court in the event of a dispute over enforcement

---

[2] Department of Housing and Urban Development regulations require a housing authority to make five percent of its newly constructed or substantially altered housing units accessible to individuals with mobility impairments. *See* 24 C.F.R. §§ 8.22-8.23. In this action, ADAPT sought construction of accessible housing units in excess of the five percent accessibility requirement.

of the Agreement.

After the December 31, 2003 deadline had passed, ADAPT sought confirmation from PHA that the first group of accessible units had been made available in accordance with the Agreement. To this end, ADAPT first sought discovery of the addresses of the accessible units which PHA claimed fulfilled its obligations under Paragraph B of the Agreement. After successfully obtaining the relevant addresses, ADAPT visited a number of these units and determined that several units identified as "accessible" had not been leased to tenants who required the various accessibility features. As a result, ADAPT filed a motion to enforce the Agreement, alleging that while PHA had created the accessible housing units consistent with the terms of the Agreement, it nonetheless violated Paragraph C of the Agreement by failing to lease a significant number of the units to tenants with mobility impairments.

In connection with its motion to enforce, ADAPT filed a series of additional motions, seeking to obtain in discovery the medical verifications of the tenants residing in those units. During these discovery disputes, Resident Advisory Board, Inc. ("RAB"), a non-profit organization advocating on behalf of residents of tax-subsidized housing, intervened in the action, aiming to protect the privacy interests of the affected tenants.

As we discuss below, the District Court issued five discovery orders during the course of the settlement enforcement proceeding, dated as follows: (1) May 10, 2004, (2) September 3, 2004, (3) November 24, 2004, (4) February 10,

2005, and (5) March 15, 2005.[3] PHA complied with all orders and produced all documents and information. PHA and RAB have filed nine separate appeals from the five discovery orders. Three of those appeals, taken from the May 10, 2004 and September 3, 2004 orders, have already been dismissed for want of appellate jurisdiction.[4] *See Adapt of Philadelphia v. Philadelphia Hous. Auth.*, 417 F.3d 390 (3d Cir. 2005) ("*Adapt I*") (holding that the orders were not final and appealable orders). Thus, six appeals remain pending, and it is those appeals which invoke our jurisdiction here.

In order to determine our jurisdiction over the instant appeals, it is necessary to describe the contents and rulings of the District Court's orders which gave rise to each appeal. In addition, to put the present appeals in the appropriate jurisdictional perspective, we are obliged to visit once again the three appeals (arising from the May 10, 2004 and September 3, 2004 orders) which had been dismissed earlier by a separate panel of this court for lack of appellate jurisdiction.

---

[3] The District Court also entered a sixth order on June 3, 2005, which denied RAB's motion to seal the courtroom. RAB has appealed from that order, but that appeal – No. 05-2954 – has been stayed pending resolution of the instant appeals. Inasmuch as that appeal is not before us for decision, and is not a discovery order, we do not address it in this opinion.

[4] The three dismissed appeals – 04-2595 (PHA), 04-3651 (PHA) and 04-3686 (RAB) – largely concerned the disclosure of the addresses of the accessible units, and the privacy rights of the tenants.

B.

*The May 10, 2004 Order*

On January 29, 2004, PHA notified ADAPT that it had met the December 31, 2003 deadline under Paragraph B of the Agreement. PHA, however, did not provide the addresses of the accessible units which it claimed fulfilled its obligations under that Paragraph. When ADAPT sought those addresses in order to verify compliance with the Agreement, PHA refused. ADAPT thereupon filed a discovery motion, styled as a "motion to compel" disclosure of the addresses in the District Court. PHA opposed the discovery motion, arguing that the Agreement did not require identification of addresses.

On May 10, 2004, the District Court granted ADAPT's motion and entered an order requiring PHA to identify the street addresses of the accessible units created in accordance with the terms of the Agreement. It also required PHA to provide a "statement identifying which of these units are not leased to households that have a person with a mobility disability that requires accessibility features." PHA moved for reconsideration and a stay in the District Court, both of which were denied.

ADAPT's counsel thereafter visited a number of these units, seeking to ascertain whether or not the units were occupied by tenants with mobility impairments. As stated in two declarations submitted by ADAPT in connection with its motion to enforce the Agreement, ADAPT's counsel "looked in windows" and "spoke to neighbors" to verify these facts. As a result of this assessment, ADAPT filed its motion to enforce the

Agreement, arguing that a number of units identified as accessible had not been leased to households with occupants who required the accessibility features. ADAPT sought declaratory and injunctive relief.

Meanwhile, PHA did not seek a stay with this Court, but instead complied with the May 10, 2004 order and filed an appeal. As stated, that appeal – No. 04-2595 – was dismissed on jurisdictional grounds in *Adapt I*. *See Adapt I*, 417 F.3d at 396.

## *The September 3, 2004 Order*

PHA's opposition to ADAPT's first motion to compel disclosure of the addresses was a harbinger of things to come. ADAPT filed two more "motions to compel" in the District Court based on PHA's alleged failure to comply with its obligations under Paragraph B of the Agreement. In the first of those motions, ADAPT sought the street addresses of each accessible residence created pursuant to Paragraph B at the Mount Olivet and Suffolk Manor public housing projects. In 2003, after the parties had entered into the Agreement, PHA asked for ADAPT's consent to substitute units at Mount Olivet and Suffolk Manor for units that PHA had previously identified and agreed to. ADAPT agreed to these substitutions, which formed the basis of its motion to compel.

In its second motion, ADAPT sought the street addresses of each residence that PHA had made accessible at various public housing projects in accordance with the requirements of 24 C.F.R. Part 8. *See supra* note 2. Because PHA agreed under the Agreement to construct 248 accessible units *in excess* of its

statutory obligations under the five percent accessibility requirement, ADAPT sought confirmation that these statutorily required units had in fact been made available.

In response, PHA filed a motion to enforce the Agreement, or, in the alternative, to vacate the Agreement. PHA argued that ADAPT, in demanding individualized oversight of PHA's tenant decisions, was seeking to impose terms that PHA had refused to furnish through negotiations leading to the Agreement. According to PHA, it was required to produce no more information than that required by Paragraph P of the Agreement, which, as previously noted, required PHA to report quarterly "regarding the implementation and status of Paragraph B Accessible Units." Additionally, PHA argued that ADAPT, in demanding information respecting the units constructed in accordance with 24 C.F.R. Part 8 (the 5% accessibility requirement), was seeking relief outside the scope of the Agreement, which did not concern nor involve 24 C.F.R. Part 8.

Sometime thereafter, RAB intervened, claiming that the requested disclosures would violate the privacy rights of the residents living in the subject units. The District Court, however, granted both of ADAPT's motions on September 3, 2004. After unsuccessfully seeking a stay in the District Court, PHA complied with the order, turning over the relevant information.

PHA then appealed, arguing that the ordered disclosures were beyond the scope of the Agreement. RAB separately appealed, arguing that the ordered disclosures violated the

-11-

tenants' privacy rights.  Together with the appeal from the May 10, 2004 order (No. 04-2595), both appeals – No. 04-3651 (PHA) and No. 04-3686 (RAB) – were dismissed on jurisdictional grounds in *Adapt I*.  *See Adapt I*, 417 F.3d at 396.

The remaining three discovery orders – the District Court's orders dated November 24, 2004, February 10, 2005, and March 15, 2005, which are the focus of the instant consolidated six appeals – concern certain medical information about the tenants of the accessible public housing units.  We describe those orders below.

*The November 24, 2004 Order*

ADAPT next sought discovery from PHA concerning the medical and physical conditions of the disabled occupants of the units constructed for the mobility impaired in accordance with the Agreement.  In particular, ADAPT requested copies of the verifications of mobility impairment relied upon by PHA in making tenant placements for the accessible housing units.  To this end, ADAPT served certain interrogatories and requests for production of documents on PHA.  In response, PHA served timely objections and moved for a protective order.  RAB also moved the District Court for a protective order, contending that the disclosure sought by ADAPT violated the privacy rights of the affected tenants.  ADAPT then moved to compel PHA to answer the interrogatories and produce the requested documents.

As noted above, PHA requires verifications of mobility impairment, which are usually completed by physicians, before accepting tenants for accessible housing units.  The verification

-12-

form consists of a series of "yes" or "no" questions asking whether the individual seeking public housing requires certain accessibility features for the mobility impaired – *i.e.*, wider doors, lowered sinks and counter tops, and grab bars. Question No. 5 of the verification form also asks the physician or reporting individual the following:

> Please provide further information that would assist us to determine the accessible housing features and/or accommodations in housing required by the applicant (i.e., features to accommodate devices and equipment used by the applicant, particular needs not addressed by the features listed above, etc.). We do not require details or information about the nature or extent of the disability.

On November 24, 2004, the District Court granted in part and denied in part RAB's motion for a protective order.[5] The District Court ordered PHA to produce the medical verifications for the residents of each of the units in question. The District Court also ordered that the "verifications produced shall have the residents' names redacted and shall be identifiable by the resident's [sic] initials, unit address, and date residency commenced." As an additional privacy protection, the District Court ordered that "counsel for plaintiffs . . . shall not disclose the information contained in the medical verifications to anyone other than their outside experts, who must agree in advance and in writing to keep the information in confidence pending further

---

[5] The District Court also denied PHA's motion for a protective order in a separate ruling on November 3, 2004. That ruling is not before us.

-13-

order of the court."

In compliance with the District Court's order, PHA produced the redacted medical information. PHA (No. 04-4734) and RAB (No. 04-4502) appealed.

*The February 10, 2005 Order*

Based on the redacted verifications produced pursuant to the November 24, 2004 order, ADAPT determined that 59 residents did not "require the accessibility features" of the particular units. Accordingly, ADAPT filed a motion to compel further disclosures limited to these 59 units. Specifically, ADAPT moved the District Court to compel PHA to produce unredacted copies of the same verifications.

On February 10, 2005, the District Court ordered PHA to produce the medical verifications for 59 of the 149 units subject to the November 24, 2004 order with only the residents' names redacted – the answers to Question 5 (requiring accessibility features) for the 59 residents "otherwise shall not be redacted." The District Court again required the verifications to be filed under seal and in accordance with the same confidentiality terms.

In compliance with the court order, PHA produced the unredacted verifications. PHA (No. 05-1727) and RAB (05-1692) then appealed.

*The March 15, 2005 Order*

-14-

In its March 15, 2005 order, the District Court ordered PHA to produce the unredacted documents for five additional units, as well as a chart drawn up by PHA's expert witness. As in the previous discovery orders, the names of the residents were redacted and disclosure was limited to ADAPT's counsel and experts. PHA (No. 05-2080) and RAB (05-2079) appealed.

C.

*The August 29, 2005 Order (Denying Enforcement of the Agreement)*

On August 29, 2005, after all the foregoing nine appeals had been filed and after the three appeals in *Adapt I* had been dismissed, the District Court entered its final judgment denying all motions to enforce the Agreement. In a thorough opinion, the District Court examined each of the challenged units[6] to determine whether PHA had violated Paragraph C of the Agreement, which required rental to disabled tenants. The District Court considered the following documentation: medical verifications, statements of personal interviews conducted by PHA, and personal statements of the residents introduced into evidence in lieu of their testimony.

In effect, ADAPT had contended that the individuals in question, while suffering from some physical handicaps, did not require the use of wheelchairs and thus did not need the

_____

[6] By this time, ADAPT had limited its challenge to 36 accessible units, instead of 59 units. Hence, the District Court analyzed and discussed only those 36 units in its opinion.

accessibility features of the particular units.  The District Court, refusing to read a wheelchair or similar requirement into the Agreement and declining to establish a rigid hierarchy among eligible disabled persons, concluded that PHA, in placing the individuals in question, had acted reasonably and in conformity with its obligations under the Agreement.  Noting that the placement of disabled persons in the subject units was not "an exact science," the District Court stated that ADAPT's position would require the court to "micromanage eligibility decisions and to act as a 'super-PHA.'"

Accordingly, the District Court denied ADAPT's motion to enforce the Agreement.  In doing so, the District Court also denied PHA's motion to enforce the Agreement, finding that ADAPT merely sought to gain information through discovery to ensure compliance with the Agreement.

II.

As a result of the judgment by this court dismissing the three earlier appeals, *see Adapt I*, 417 F.3d at 396, we are left with the following appeals to review: 04-4734 (PHA), 04-4502 (RAB), 05-1727 (PHA), 05-1692 (RAB), 05-2080 (PHA), and 05-2079 (RAB).  All six appeals concern the compelled disclosure of medical verifications.  At issue is whether we have appellate jurisdiction over these appeals.

With exceptions not relevant here, we may only hear appeals from final judgments of the district courts.  *See* 28

U.S.C. § 1291.[7] Discovery orders are not final decisions within the meaning of 28 U.S.C. § 1291. *See, e.g., Smith v. BIC Corp.,* 869 F.2d 194, 198 (3d Cir. 1989); *Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1116 (3d Cir. 1986) ("Discovery orders, being interlocutory, are not normally appealable."); *New York v. United Metals Refining Co.,* 771 F.2d 796 (3d Cir.1985). In certain limited circumstances, however, discovery orders may be reviewed pursuant to the collateral order doctrine of *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541 (1949), which provides a narrow exception to the general rule permitting appellate review only of final orders.

PHA initially argued in its appellate brief that appellate jurisdiction lies under the collateral order doctrine.[8] PHA now

---

[7] 28 U.S.C. § 1291 provides that "[t]he courts of appeals . . . shall have jurisdiction of appeals from all final decisions of the district courts of the United States."

[8] *Adapt I* rejected PHA's argument based on the collateral order doctrine, as do we. *See Adapt I*, 417 F.3d at 395. PHA has also argued that appellate jurisdiction lies under 28 U.S.C. § 1292(a), which provides jurisdiction over "[i]nterlocutory orders of the district courts . . . granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions." We rejected the same argument as meritless in *Adapt I*, holding that "[a]n order compelling discovery does not grant part of the substantive relief sought and is therefore not an injunction for the purposes of section 1292(a)(1)." *Id.* at 396 (citing *Hershey Foods Corp. v. Hershey Creamery Co.*, 945 F.2d 1272, 1277 (3d Cir. 1991)).

argues that with the entry of final judgment – the August 29, 2005 order, we have acquired appellate jurisdiction over these six consolidated appeals under 28 U.S.C. § 1291. Contending that entry of the August 29, 2005 order converted the interlocutory orders from which these premature appeals were taken into final orders, PHA seeks to distinguish *Adapt I* from the instant appeals.

PHA argues that at the time we dismissed the appeals in *Adapt I*, no final judgment had yet to be entered by the District Court. As a result, finality had not attached to the discovery orders that had been appealed. PHA now claims that, with the filing of the August 29, 2005 order, any problems of finality affecting the instant six appeals have been cured. In so arguing, PHA relies on a number of precedents from our court, including two decisions in particular: *Cape May Greene, Inc. v. Warren*, 698 F.2d 179 (3d Cir. 1983), and *Lazy Oil Co. v. Witco Corp.*, 166 F.3d 581 (3d Cir. 1999). There, we essentially held that the premature appeals in those cases had become effective upon entry of final judgment.

ADAPT, on the other hand, argues that we have no jurisdiction over the six appeals, relying on the Supreme Court's decision in *FirsTier Mortgage Co. v. Investors Mortgage Ins. Co.*, 498 U.S. 269 (1991).[9] In that case, the Supreme Court

---

[9] ADAPT also argues that entry of final judgment renders the instant appeals moot. While mootness presents problems of a jurisdictional nature, we are more concerned with the threshold problem of appellate jurisdiction. Accordingly, we requested the parties to address the basis of our appellate

construed the specific appellate rule governing premature appeals – Federal Rule of Appellate Procedure 4(a)(2) – and held, in unequivocal terms, "that Rule 4(a)(2) [does not] permit[] a notice of appeal from a clearly interlocutory decision--such as a *discovery ruling* or a sanction order under Rule 11 of the Federal Rules of Civil Procedure--to serve as a notice of appeal from the final judgment." *See FirsTier,* 498 U.S. at 276 (emphasis added). ADAPT contends that under *FirsTier*, the instant appeals suffer from the same problems of finality as the three appeals dismissed in *Adapt I.*

These six appeals now require us to determine whether discovery orders and other similar interlocutory orders, if followed by entry of final judgment, qualify as premature appeals that may ripen upon entry of judgment.[10] We hold that they do not. Accordingly, we are without jurisdiction to reach the merits of the appeals. *See Firestone Tire & Rubber Co. v.*

jurisdiction, with particular emphasis on the Supreme Court's decision in *FirsTier Mortgage Co. v. Investors Mortgage Ins. Co.*, 498 U.S. 269 (1991). The parties submitted supplemental briefs after oral argument.

[10] Although the parties did not address the impact of the Supreme Court's decision in *FirsTier* upon our jurisdictional analysis, we raised the issue *sua sponte*, having the inherent obligation to satisfy ourselves that appellate jurisdiction attaches to the instant appeals. *See Collinsgru v. Palmyra Bd. of Educ.*, 161 F.3d 225, 229 (3d Cir. 1998). We have plenary review to determine our jurisdiction. *See In re: Diet Drugs Products Liab. Litig.* 401 F.3d 143, 152 (3d Cir. 2005).

*Risjord*, 449 U.S. 368, 379 (1981).

## III.

### A.

Our decision in *Cape May Greene, Inc. v. Warren*, 698 F.2d 179 (3d Cir. 1983), provides the analytical point of departure for examining the appealability of the six instant appeals.  In *Cape May Greene*, this court held that a premature notice of appeal, filed after disposition of some of the claims before a district court, but before entry of final judgment, will ripen upon the court's disposal of the remaining claims.  *See id.* at 184-85. There, the district court granted summary judgment against the plaintiff and in favor of the defendants.  The plaintiff thereupon filed a notice of appeal from the district court's order granting summary judgment.  However, the defendants had filed a cross-claim, which had not been adjudicated at the time the notice of appeal was filed.  As a result, the judgment of the district court was not final.  *See* Fed. R. Civ. P. 54(b).[11]  This court upheld its jurisdiction to review the grant of summary judgment against the plaintiff.  It did so because the cross-claim, although not disposed of before the notice of appeal was filed, was adjudicated after the notice of appeal was filed, thereby achieving finality as to all claims.  *Id.* at 184.

The so-called *Cape May Greene* rule – and its expansive

---

[11] Absent certification by the district court, Federal Rule of Civil Procedure 54(b) requires disposition of all claims and parties in order for finality to attach.

view of appellate jurisdiction – has been reaffirmed by this court on multiple occasions.[12]  Some courts of appeals, however, have not adhered to such a rule.  *See, e.g.*, *United States v. Hansen*, 795 F.2d 35, 37-38 (7th Cir. 1986) (discussing circuit split on the issue and rejecting *Cape May Greene* rule).

Still other courts of appeals that have followed a rule similar to *Cape May Greene* have restricted finality in premature cases in light of the Supreme Court's decision in *FirsTier*, which, as discussed below, called into question broader understandings of when premature appeals may ripen upon entry of final judgment.  *See Outlaw v. Airtech Air Conditioning and Heating, Inc.,* 412 F.3d 156, 160 (D.C. Cir. 2005) ("We agree with decisions concluding that those prior lines of precedent must be limited in light of *FirsTier*."); *United States v. Cooper*, 135 F.3d 960, 963 (5th Cir. 1998) ("[W]e recognize that in light of *FirsTier*, this expansive view of appellate jurisdiction cannot survive"); *Serine v. Peterson*, 989 F.2d 371, 372 (9th Cir. 1993).

But while other jurisdictions have narrowed their holdings involving premature appeals in light of *FirsTier*, we have declined thus far to do the same, holding that the *Cape May Greene* rule has not been overruled by *FirsTier*.  *See Lazy Oil*, 166 F.3d at 587.  We begin our analysis with Federal Rule

---

[12] *See Presinzano v. Hoffman-La Roche, Inc.*, 726 F.2d 105 (3d Cir. 1984); *Dowling v. City of Philadelphia*, 855 F.2d 136 (3d Cir. 1988); *Lazy Oil Co. v. Witco Corp.*, 166 F.3d 581 (3d Cir. 1999); *General Motors Corp. v. New A.C. Chevrolet, Inc*., 263 F.3d 296 (3d Cir. 2001).

of Appellate Procedure ("FRAP") 4(a)(2).

B.

FRAP 4(a)(2), as construed by the Supreme Court, allows certain qualifying premature appeals to become effective upon entry of final judgment, thus preserving those appeals from dismissal for failure to satisfy the jurisdictional prerequisite of finality. FRAP 4(a)(2) provides that "[a] notice of appeal filed after the court announces a decision or order--but before the entry of the judgment or order--is treated as filed on the date of and after the entry." In *FirsTier*, the Supreme Court held that FRAP 4(a)(2) "permits a notice of appeal from a nonfinal decision to operate as a notice of appeal from the final judgment only when a district court announces a decision that *would be* appealable if immediately followed by the entry of judgment." 498 U.S. at 276.

*FirsTier* involved a notice of appeal that was filed after the district judge announced from the bench that he was granting summary judgment on all claims, but before the court entered findings of fact and conclusions of law. The Supreme Court concluded that FRAP 4(a)(2) operated to make the premature appeal effective after the subsequent entry of final judgment. As the Court explained, FRAP 4(a)(2) "was intended to protect the unskilled litigant who files a notice of appeal from a decision that he reasonably but mistakenly believes to be a final judgment, while failing to file a notice of appeal from the actual final judgment." *Id.* In such cases, the Court further explained, "a litigant's confusion is understandable, and permitting the notice of appeal to become effective when judgment is entered

-22-

does not catch the appellee by surprise." *Id.*

The Court contrasted those situations "from a clearly interlocutory decision-such as a discovery ruling or a sanction under Rule 11," because a "belief that such a decision is a final judgment would *not* be reasonable." *Id.* Hence, the Court concluded that "Rule 4(a)(2) [does not] permit[] a notice of appeal from a clearly interlocutory decision--*such as a discovery ruling* or a sanction order under Rule 11 of the Federal Rules of Civil Procedure--to serve as a notice of appeal from the final judgment." *Id.* (emphasis added). We have held, however, that there are situations other than those covered by FRAP 4(a)(2) when a premature notice of appeal will ripen at a later date. *See Lazy Oil*, 166 F.3d at 587.

C.

In *Lazy Oil*, the precedent on which PHA most heavily relies, we reaffirmed the validity of the *Cape May Greene* doctrine, holding that *Cape May Greene* had not been overruled by *FirsTier*. *Lazy Oil* involved an appeal that had been taken from an order of the district court approving a class action settlement and denying various objectors' motions. However, in that same order, the district court denied a motion to approve an allocation plan for the settlement proceeds. Directly after the order had been entered, objectors filed a notice of appeal. Two months later, the district court approved a revised allocation

plan.  Final judgment was then entered and the case closed.  *Id.* at 585.

The question posed in *Lazy Oil* was "whether a notice of appeal, filed . . . after a district court's order approving a class action settlement but before the court enters a final judgment approving all aspects (including the allocation) of the settlement, ripens upon the district court's entry of final judgment or is premature and void."  *Id.*  The *Lazy Oil* court exercised jurisdiction over the premature notice of appeal, relying on *Cape May Greene* and holding that our earlier precedents, including *Cape May Greene*, were not overruled by *FirsTier*.  *Id.* at 586.  The court acknowledged "that Rule 4(a)(2) does not support the *Cape May Greene* doctrine when the order from which a notice of appeal is filed is *not* one that would be final if followed immediately by entry of judgment."  *Id.*  However, the court determined that the *Cape May Greene* rule remained viable because *FirsTier* simply limited the reach of Rule 4(a)(2)'s proviso.  *Id.* at 587.  In this court's view, "[*FirsTier*] did not hold that the Rule 4(a)(2) situation – announcement of a final decision followed by notice of appeal and then entry of the judgment – is the only situation in which a premature notice of appeal will ripen at a later date."  *Id.*

D.

Conceptually speaking, *Lazy Oil* construed the *Cape May Greene* rule as broader than the limitations established by *FirsTier,* thus encompassing more situations than those strictly controlled by FRAP 4(a)(2).  Our cases now hold that premature appeals may ripen upon entry of final judgment pursuant to two

distinct jurisdictional doctrines: (1) the *Cape May Greene* rule and (2) Federal Rule of Appellate Procedure 4(a)(2).[13]  FRAP 4(a)(2), as construed in *FirsTier*, cannot save the present premature appeals, which have their roots in discovery orders. *See FirsTier*, 498 U.S. at 276.  That narrows our focus to whether the present appeals can be saved pursuant to the *Cape May Greene* and *Lazy Oil* doctrine, which makes no distinction between unalterably interlocutory (discovery) orders and orders that would be final upon entry of judgment.

Our decision in *Lazorko v. Pennsylvania Hosp.*, 237 F.3d 242 (3d Cir. 2000), is instructive here.  In *Lazorko,* we held that there was no jurisdiction over an appeal from an award of sanctions where the district court had yet to quantify the amount of the sanction before the notice of appeal was filed.  Although the district court subsequently entered its final order on the sanctions award before we heard the appeal, we held that the entry of the final order did not cure the premature appeal and render it timely.  In so holding, *Lazorko* cited to *FirsTier*; it did not cite to *Cape May Greene* or *Lazy Oil*.  *Id.* at 248.

The present case bears far more similarity to *Lazorko*

---

[13]  *Lazy Oil* has been criticized for fashioning, without institutional warrant, an additional doctrine to save premature notices of appeals that are not saved under the rules, as construed by the Supreme Court.  *See Outlaw,* 412 F.3d at 160 n.2 (disagreeing with *Lazy Oil*) (Roberts, J.).  But that criticism, whatever its validity, does not bear upon our decision.  Because we are dealing here with *discovery* orders, we hold *Lazy Oil* inapposite.

than to *Cape May Greene* or *Lazy Oil.* We take pains in emphasizing that none of the cases following *Cape May Greene*, *Lazy Oil* included, involved discovery or similar interlocutory orders. *See supra* note 12. Moreover, as stated in *Lazy Oil*, the *Cape May Greene* rule applies where the refusal to exercise jurisdiction would elevate a mere technicality above important substantive issues. *See Lazy Oil Co.*, 166 F.3d at 587. That is not the situation here. To the contrary, these appeals raise compelling concerns about piecemeal litigation. As we explained in *Adapt I*:

> [T]hese appeals [from discovery orders] are stark examples of why Congress, through 28 U.S.C. § 1291, has expressed a distaste for piecemeal litigation. PHA has disputed several issues resolved by the District Court and, without regard for whether they are final or whether there exists any exception to the finality rule, seem to have filed a corresponding appeal for each. As a result, this case is being litigated on appeal piece by piece, from order to order, *seriatim.* . . . Litigating cases in this manner is undesirable for several reasons. It creates delay; it adds to the costs and efforts that must be expended by both the parties and the courts; and, as is prevalent in this case, it diminishes the coherence of the proceedings.

*Adapt I*, 417 F.3d at 396. As such, the assertion of appellate jurisdiction in the case *sub judice* would do more than overcome a mere technicality – it would invite the very piecemeal litigation discouraged by 28 U.S.C. § 1291.

-26-

Perhaps more importantly, *Lazy Oil* noted "that Rule 4(a)(2) does not support the *Cape May Greene* doctrine when the order from which a notice of appeal is filed is not one that would be final if followed immediately by entry of judgment." *Lazy Oil Co.*, 166 F.3d at 586. That is the precise situation presented by these appeals. Therefore, whatever the continued viability of *Lazy Oil* may be, *see supra* note 13, it cannot control interlocutory orders such as the discovery orders found here or the sanctions order of the nature found in *Lazorko*.

## IV.

Concluding that the *Cape May Greene* and *Lazy Oil* rule is not applicable to discovery or similar interlocutory orders, we hold that appeals from discovery orders do not qualify as premature appeals that may ripen upon entry of final judgment. Accordingly, the six instant appeals, no different from the appeals dismissed in *Adapt I,* must be dismissed for lack of appellate jurisdiction.[14]

---

[14] Had a notice of appeal been filed from the August 29, 2005 order, we could have reviewed the various discovery orders which have been the subject of the instant appeals. As it is, however, no appeal has been taken from that final order.