

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-18-2006

# In Re: Pressman

Precedential or Non-Precedential: Precedential

Docket No. 05-1012

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"In Re: Pressman " (2006). *2006 Decisions.* Paper 513.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/513

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

Nos. 05-1012 and 05-1026

———

IN RE: PRESSMAN-GUTMAN CO., INC.
EMPLOYER/SPONSOR OF THE PRESSMAN-GUTMAN CO.,
INC. PROFIT SHARING PLAN,

Petitioner in 05-1012

PRESSMAN-GUTMAN CO., EMPLOYER/SPONSOR
OF THE PRESSMAN-GUTMAN CO., INC.
PROFIT SHARING PLAN,

Appellant in 05-1026

v.

FIRST UNION NATIONAL BANK;
FOREFRONT CAPITAL ADVISORS, LLC.
ALVIN P. GUTMAN; JAMES C. GUTMAN

ALVIN P. GUTMAN; JAMES C. GUTMAN,

Third-Party Defendants

On Appeal from and on a Petition for
a Writ of Mandamus or Prohibition
directed to the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civ. No. 02-08442)
Honorable Lawrence F. Stengel, District Judge

———

Argued March 7, 2006

BEFORE: RENDELL and GREENBERG, <u>Circuit</u> Judges, and
IRENAS, <u>District</u> Judge*

(Filed: August 18, 2006)

––––––––––

A. Richard Feldman (argued)
E. McCord Clayton
Bazelon Less & Feldman, P.C.
1515 Market Street, 7th Floor
Philadelphia, PA 19102

    <u>Attorneys for Appellant/Petitioner</u>
    <u>Pressman-Gutman Co., Inc.</u>

Zachary L. Grayson (argued)
The Lexington Law Group
1201 Chestnut Street, 10th Floor
Philadelphia, PA 19107

    <u>Attorneys for Appellee/Respondent</u>
    <u>Forefront Capital Management, LLP</u>

Joseph G. DeRespino (argued)
Derespino & Dougher, P.C.
1818 Market Street, Suite 2910
Philadelphia, PA 19103

    <u>Attorneys for Appellee/Respondent</u>
    <u>First Union National Bank</u>

––––––––––

OPINION OF THE COURT

––––––––––

GREENBERG, <u>Circuit</u> <u>Judge</u>.


I. INTRODUCTION

––––––––––

*Honorable Joseph E. Irenas, Senior Judge of the United States
District Court for the District of New Jersey, sitting by designation.

2

This matter comes on before the court on an appeal by plaintiff Pressman-Gutman Co., Inc. ("PGI") from certain orders of the district court disqualifying counsel for PGI and appointing a guardian ad litem to replace the administrators of the employee profit-sharing plan on whose behalf PGI initiated this action under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §1001 et. seq. Inasmuch as PGI recognizes that we may lack appellate jurisdiction, it has filed a petition for a writ of mandamus or prohibition ("Pl.'s pet.") invoking our original jurisdiction and seeking to prevent enforcement of the orders from which it appeals. For the reasons explained below, we will dismiss the appeal for lack of jurisdiction and deny the petition for a writ of mandamus.[1]

## II. FACTUAL AND PROCEDURAL HISTORY

PGI is the employer sponsor and named fiduciary of the Pressman-Gutman Co., Inc. Profit Sharing Plan (the "Plan"), on whose behalf PGI in such capacities brought this action on November 13, 2002, against First Union National Bank ("First Union") and ForeFront Capital Advisors, LLC ("ForeFront") (collectively "defendants"). In the action PGI sought to recover damages on behalf of the Plan and its participants and beneficiaries that PGI claimed the Plan sustained as a result of defendants' mismanagement of the Plan's assets.[2] In sum, PGI alleged that First Union, as trustee of the Plan,

---

[1] Throughout this opinion we will refer to the petition as seeking only a writ of mandamus as all the relief PGI seeks is available through mandamus.

[2] "J.A." refers to the joint appendix filed by PGI. Even though the facts relating to defendants' liability are in sharp dispute, the pertinent facts material to our disposition of these matters are undisputed. We note that each party in these contentious proceedings accuses its opponent of improperly citing material outside the record in contravention of the "black letter law that a United States court of appeals may not consider material or purported evidence which was not brought upon the record in the trial court." United States ex rel. Bradshaw v. Alldredge, 432 F.2d 1248, 1250 (3d Cir. 1970). We have taken note of these reciprocal complaints and have considered only materials that we believe are within the record. We observe, however, that nothing of which we are aware outside the record, if considered,

3

and ForeFront, as First Union's sub-advisor, breached fiduciary duties they owed to the Plan by pursuing an imprudent investment course contrary to various representations made to PGI on which it justifiably relied. In initiating this litigation, PGI acted by and through its secretary, Alvin Gutman, and its president, James Gutman, Alvin's son, then the sole members of the Plan's Administrative Committee. At the time that PGI filed this action, the law firm of Hamburg & Golden, P.C. ("H&G") represented it.

On April 22, 2003, First Union filed a third-party complaint against the Gutmans asserting that they had participated in and consented to defendants' investment decisions and alleging that the Gutmans breached fiduciary duties owed to the Plan under ERISA by failing to take appropriate action with respect to the Plan's investments and assets.[3] First Union further alleged that the Gutmans were negligent in the discharge of their fiduciary duties. Therefore, First Union sought judgment in its favor against the Gutmans "for contribution and/or indemnity, in the event that First Union is found liable to Plaintiff for any damages." J.A. at 252.

The Gutmans retained H&G as their attorneys to defend them against the third-party complaint. This retention led First Union to file a motion on August 1, 2003, to disqualify H&G as attorneys in this case alleging that it had an "inherent and unwaivable conflict of interest resulting from [H&G's] joint representation of both Plaintiff and Third-Party Defendants."[4] J.A. at 277. The district court denied the motion, finding that there was insufficient evidence to disqualify H&G at that time. ForeFront later filed a renewed motion, in which First Union joined, to disqualify H&G from representing both the plaintiff, PGI, and the third-party defendants, the Gutmans, asserting that new facts had emerged during the course of discovery to bolster

---

would have caused us to alter our result.

[3]Forefront did not file a third-party complaint against the Gutmans, but First Union and Forefront filed cross-claims against each other.

[4]The motion did not clearly indicate whether First Union sought H&G's total disqualification, but its supporting memorandum asked the court to disqualify "[H&G] and its attorneys from any continued representational role in this case." Id. at 286.

4

the case for disqualification.[5]

Before the district court ruled on the renewed motion to disqualify H&G, the Gutmans filed a motion for summary judgment on the third-party complaint that the district court denied on May 13, 2004. The district court held that First Union raised triable issues concerning the Gutmans' control over the Plan's assets and management, explaining that "to the extent that the Gutmans may have used their positions to cause First Union and/or ForeFront to relinquish their independent discretion with respect to management of the assets and exercised actual control over the assets, the Gutmans may be liable as fiduciaries for investment decisions." J.A. at 1770-71 n.1 (internal citations omitted).

After denying the Gutmans' motion for summary judgment, the district court considered ForeFront's renewed motion to disqualify H&G. On August 30, 2004, the district court ordered that H&G be "disqualified from serving as counsel for third-party defendants" and further ordered that all pending motions be stayed for 30 days to allow the Gutmans to obtain new counsel. J.A. at 3. The court, however, did not disqualify H&G from representing PGI. In a memorandum accompanying the order, the court analyzed the conflict issue under Rule 1.7 of the Pennsylvania Rules of Professional Conduct ("Pa. R.P.C."), as the rule then read, which was applicable in the district court and which pertains to simultaneous representation of clients with adverse interests,[6] and determined that disqualification was

---

[5]Even though Forefront filed the renewed motion, as far as we can ascertain only First Union filed the original motion to disqualify H&G. Nevertheless, in its memorandum supporting its renewed motion Forefront indicated that both defendants filed the original motion. For purposes of this opinion we need not resolve this discrepancy.

[6]The Local Rules of the United States District Court for the Eastern District of Pennsylvania incorporate the Pa. R.P.C., which the Supreme Court of Pennsylvania has adopted. See E.D. Pa. Local R. 83.6 (IV)(B).

Rule 1.7 though since amended effective January 1, 2005, provided on August 30, 2004, that:

> (a) A lawyer shall not represent a client if the representation of that client will be directly adverse to

5

warranted because "plaintiff's potential claims against third-party defendants present directly adverse interests." J.A. at 7. Specifically the court explained:

> This court finds it unreasonable for [H&G] to believe it can adequately represent both plaintiff and third-party defendants. . . . The court's review of the record reveals that plaintiff has not consented to [H&G's] joint representation of plaintiff and third-party defendants. Therefore, H&G is disqualified from representing third-party defendants in this action.

J.A. at 7. On September 17, 2004, Attorney Christopher M. Tretta filed a notice of appearance on behalf of the Gutmans, and H&G withdrew as their counsel four days later. On September 8, 2004, ForeFront and First Union filed motions seeking reconsideration or clarification of the August 30, 2004 order as they believed that the court should have disqualified H&G completely while the order only disqualified H&G from representing the Gutmans as third-party defendants. In addition, the defendants requested that the court appoint a "trustee ad litem" for the Plan as they argued, inter alia, that the Gutmans, who had been in control of the Plan's litigation, could not represent its interests adequately.

1. The November 30, 2004 Order

---

another client, unless: (1) the lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and (2) each client consents after consultation.

(b) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless: (1) the lawyer reasonably believes the representation will not be adversely affected; and (2) the client consents after full disclosure and consultation. When representation of multiple clients in a single matter is undertaken, the consultation shall include explanation of the implication of the common representation and the advantages and risks involved.

On November 30, 2004, the district court granted defendants' motions which sought to disqualify H&G completely and asked the court to appoint a trustee ad litem to replace the Gutmans as representatives of the Plan. At that time the court vacated its August 30, 2004 order. Notwithstanding the fact that two months earlier H&G had withdrawn from representing the Gutmans and new counsel had entered an appearance on their behalf, the district court reviewed "the record as it existed on August 30, 2004," J.A. at 19, the date that the court originally partially disqualified H&G, and again analyzed the conflict issue under Pa. R.P.C. 1.7. The district court explained that

> [H&G] must also be disqualified from representing the profit-sharing plan as plaintiff. Because of [H&G's] duty of loyalty to the Gutmans, who it represented on August 30, 2004, [H&G] could not recommend to the [P]lan that it act against the Gutmans, as well as, or instead of, First Union and ForeFront. . . . Based on [H&G's] duty of loyalty to the Gutmans, who may well be liable for the [P]lan's losses, I conclude that it was unreasonable for [H&G] to believe that it could adequately represent the [P]lan. Moreover, since only the Gutmans represented the [P]lan in this action, I find that any consent given by the [P]lan to [H&G] for [H&G's] continued representation of the [P]lan was invalid.

J.A. at 19. The district court based its disqualification order, in part, on the circumstance that it found that there was "no record of disclosure and waiver," and because of what it regarded as the "noteworthy" fact that H&G "has never once produced any evidence that the members of the [P]lan have any idea about a possible conflict, let alone full disclosure and waiver." J.A. at 22. The court thus disqualified H&G completely.

Notably, the district court further concluded that "the Gutmans may well not be able to fulfill their duties as administrators and fiduciaries of the plan because of their potential liability." J.A. at 23. In this regard the court explained:

> Because the Gutmans may be liable to the [P]lan, the duty to the [P]lan may include presenting claims against the Gutmans. However, because the Gutmans have an interest in protecting themselves from liability,

7

the Gutmans are not likely to act against themselves for the benefit of the [P]lan, and the [P]lan's avenues for obtaining recovery may be adversely affected. Accordingly, I will appoint a guardian ad litem <u>who will replace the Gutmans and serve as administrator of the [P]lan for the limited purpose of this lawsuit</u>. The guardian ad litem will, in turn, appoint new counsel for the [P]lan.

Id. at 23 (emphasis added). The court supported its decision to appoint a guardian ad litem by explaining that Fed. R. Civ. P. 17(c) gave it "the power to order the appointment of a representative for a party whose interests may not be adequately represented." See J.A. at 23 n.6.

Even though the district court had stated its intention to appoint a guardian ad litem who would retain new counsel for it, PGI retained A. Richard Feldman as counsel to replace H&G, and Feldman filed a notice of appearance on December 14, 2004. Feldman then promptly filed a motion requesting the district court to reconsider its November 30, 2004 order.[7]

### 2. The December 15, 2004 Order

By order entered December 15, 2004, the district court appointed Louis R. Pichini "as guardian ad litem for [the Plan] for the limited purpose of this lawsuit." J.A. at 31. The court further ordered PGI to provide Pichini with contact information for all members of the Plan, explaining that "Mr. Pichini shall contact the members . . .

---

[7]In its petition for a writ of mandamus PGI notes that it retained Feldman "to represent it for the limited purpose of overturning the November 30, 2004 order on reconsideration, and any appellate proceedings concerning that Order." Pl.'s pet. at 10 n.2; see also J.A. at 1903 n.1 (Feldman's firm "Bazelon, Less & Feldman, P.C. has been retained" to file a motion for reconsideration of the November 30, 2004 order and for subsequent appellate proceedings). We are not implying that we think it was improper for PGI to engage Feldman for this limited purpose as we see no reason why the November 30, 2004 order should have been insulated from the rather common procedural device of a motion for reconsideration. In this regard we observe that PGI could not have anticipated that the attorney for the guardian ad litem would make such a motion.

for the purpose of retaining an attorney to advise the Plan regarding this litigation and to represent the Plan in this litigation." J.A. at 31-32.

In a Memorandum and Order entered December 23, 2004, the district court denied PGI's motion to reconsider. The court explained that PGI's arguments discussed "the legality of removing a fiduciary under ERISA," but that its "December 15 order did not remove any fiduciary." J.A. at 37. Instead, according to the court, "[a]t most, the December 15 order limits the ability of the Gutmans to direct the efforts of the Plan in this discrete lawsuit because they have themselves been sued in their capacities as managers or fiduciaries of the Plan." J.A. at 36. In another order also entered December 23, 2004, the court denied PGI's request for an extension of time in which to appeal the November 30, 2004 and December 15, 2004 orders inasmuch as, in the court's view, the orders were not appealable.

On December 30, 2004, PGI filed a notice of appeal, seeking review of: (1) the November 30, 2004 order disqualifying H&G from representing PGI and stating that the court intended to appoint a guardian ad litem for the Plan; (2) the December 15, 2004 order appointing Pichini guardian ad litem for the Plan; (3) the December 23, 2004 order denying PGI's motion to reconsider the December 15, 2004 order; and (4) the December 23, 2004 order denying PGI's motion for an extension of time in which to appeal.[8]

In the alternative, "in the event that appellate jurisdiction is found lacking," PGI filed a petition for a writ of mandamus in this

---

[8]By letter dated January 6, 2005, the clerk of this court advised all counsel of record on the appeal that PGI's appeal was being referred to a panel of this court for possible dismissal on account of a jurisdictional defect. The clerk directed counsel to submit in writing their positions concerning our jurisdiction by January 18, 2005, and they did so. We will refer to PGI's "Memorandum of Law on this Court's Appellate Jurisdiction," as "Appellant's juris. br."

On February 2, 2005, PGI filed a motion in this court for a stay of the proceedings in the district court pending resolution of its appeal and petition for mandamus, but before we ruled on the motion, the district court issued an order staying the proceedings in that court in light of these proceedings. Accordingly, we will deny as moot PGI's February 2, 2005 motion for a stay.

court under 28 U.S.C. § 1651 "for the purpose of correcting the District Court's unauthorized exercise of judicial power." Pl.'s pet. at 2, 13. PGI submits that we should issue a writ of mandamus because the decisions of the district court "are indefensible and beyond its power to achieve." Pl.'s pet. at 15. No party or attorney has appealed from or otherwise challenged the August 30, 2004 order precluding H&G from representing the Gutmans.

On March 29, 2005, we consolidated PGI's petition for mandamus with its appeal, and by this opinion we adjudicate both proceedings.[9]

## III. JURISDICTION

The district court had jurisdiction over this matter under 28 U.S.C. § 1331 and section 502 of ERISA, 29 U.S.C. § 1132(e). The parties dispute whether we have appellate jurisdiction. PGI contends that the orders appointing a guardian ad litem and disqualifying H&G amount to an injunction immediately appealable under 28 U.S.C. § 1292(a)(1) or, in the alternative, constitute the appointment of a receiver immediately appealable under 28 U.S.C. § 1292(a)(2). As a further alternative ground for our exercise of appellate jurisdiction at this time, PGI submits that the orders appointing a guardian ad litem are appealable under the collateral order doctrine the Supreme Court recognized in Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 69 S.Ct. 1221 (1949), and that we have pendent appellate jurisdiction over the order of disqualification of H&G. Defendants contend that we do not have appellate jurisdiction and thus we should dismiss the appeal. We unquestionably, however, have jurisdiction over PGI's petition for a writ of mandamus under the All Writs Act, 28 U.S.C. § 1651, and defendants do not contend otherwise.

## IV. DISCUSSION

---

[9]After PGI filed this appeal, the court-appointed guardian ad litem selected new counsel, and on January 26, 2005, that attorney, Mathieu Shapiro, filed a notice of appearance on behalf of PGI. We note, however, that Feldman is representing PGI on its appeal and petition for mandamus. See supra n.7.

1.  Appellate Jurisdiction

We point out at the threshold of our discussion, that we are obliged to determine whether we have jurisdiction over PGI's appeal before we reach the merits of its various challenges to the district court orders through the exercise of our appellate jurisdiction, and that if we do not have jurisdiction we cannot reach the merits of the appeal. See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 93-94, 118 S.Ct. 1003, 1012 (1998); Firestone Tire & Rubber Co. v. Risjord, 449 U.S. 368, 379, 101 S.Ct. 669, 676 (1981) ("A court lacks discretion to consider the merits of a case over which it is without jurisdiction[.]"); Sheet Metal Workers' Int'l Ass'n Local 19 v. Herre Bros. Inc., 201 F.3d 231, 237 (3d Cir. 1999). Of course, the jurisdictional problem is the result of the undeniable fact that the district court has not entered a final decision as that term conventionally is understood under 28 U.S.C. § 1291, the basis on which a court of appeals usually exercises appellate jurisdiction. For the reasons we explain below, we find that we do not have appellate jurisdiction at this time, and consequently we will dismiss the appeal.

A.  28 U.S.C. § 1292(a)(1)

PGI argues that the orders entered November 30, 2004, and December 15, 2004, are appealable with respect to the removal of the Gutmans, the appointment of the guardian ad litem, and the removal of H&G, pursuant to 28 U.S.C. § 1292(a)(1), which grants the courts of appeals jurisdiction over appeals from "[i]nterlocutory orders . . . granting, continuing, modifying, refusing or dissolving injunctions . . . except where a direct review may be had in the Supreme Court." According to PGI, though the orders it challenges lack the formal trappings of injunctive orders, nevertheless "[b]ecause those Orders prohibited [PGI] from allowing its duly appointed profit sharing plan administrators to continue to exercise any authority or control over [PGI's] lawsuit, including the selection of replacement counsel, the Orders amounted to a grant of an injunction." Appellant's juris. br. at 23; see also Appellant's br. at 54-56. This argument lacks merit.

An "injunction" for the purposes of section 1292(a)(1) is an order "[1] directed to a party, [2] enforceable by contempt, and [3] designed to accord or protect 'some or all of the substantive relief sought by the complaint' in more than a [temporary] fashion." Cohen v. Bd. of Trustees, 867 F.2d 1455, 1465 n.9 (3d Cir. 1989) (en banc) (quoting Wright & Miller, et al., Federal Practice and Procedure §

11

3922, at 29 (1977)); see also Saudi Basic Indus. Corp. v. Exxon Corp., 364 F.3d 106, 110 (3d Cir. 2004). We have held that section 1292(a)(1) "should be construed narrowly so as not to swallow the final-judgment rule." Hershey Foods Corp. v. Hershey Creamery Co., 945 F.2d 1272, 1276 (3d Cir. 1991).

In this case, the district court has not granted or denied all or part of the substantive relief sought by any party in this action. We find unpersuasive PGI's contention that because, as the district court explained, the orders replacing the Gutmans with a guardian ad litem were intended to prevent adverse effects upon "the [P]lan's avenues for obtaining recovery," see J.A. at 23, the orders can be said "to protect" the substantive relief sought by PGI and therefore granted injunctive relief. See Appellant's juris. br. at 25-26; Appellant's br. at 54-56. Such a broad reading of section 1292(a)(1) would undermine the "limited exception to the final judgment rule" that section 1292(a)(1) carves out. See Hershey Foods Corp., 945 F.2d at 1276 (internal quotation marks and citation omitted). Moreover, even accepting PGI's reasoning, there is no connection between the substantive relief PGI is seeking in the district court and the essentially procedural relief it seeks here. In this regard we reiterate our observations from the outset of this opinion, i.e., that PGI has brought this action against defendants to recover damages on account of their alleged mismanagement of the Plan's assets whereas this appeal is from an order disqualifying counsel for PGI and appointing a guardian ad litem to replace the administrators of the Plan in this litigation.

Instead of being injunctive in character, the orders from which PGI appeals are better understood as being "restraints or directions . . . concerning the conduct of parties or their counsel," unrelated to the substantive relief sought. Id. at 1278 (quoting Int'l Prod. Corp. v. Koons, 325 F.2d 403, 406 (2d Cir. 1963)). We have deemed orders of such character to fall outside of section 1292(a)(1). Id. Moreover, if the court issued the orders "to protect and maximize the Plan's recovery of damages," as PGI claims, Appellant's br. at 55, their practical effect is less like the effect flowing from an injunction and more like the effect created by traditional interim security orders, such as orders granting a writ of replevin or attachment pending disposition of an action which fall outside the scope of section 1292(a)(1). See, e.g., Nutrasweet Co. v. Vit-Mar Enters., Inc., 176 F.3d 151, 154 (3d Cir. 1999). Overall, it is clear that we do not have jurisdiction under section 1292(a)(1).

12

PGI next argues that the orders entered November 30, 2004, and December 15, 2004, are appealable pursuant to 28 U.S.C. § 1292(a)(2), which provides for appeals from the appointment of a receiver.  But section 1292(a)(2) "is interpreted narrowly to permit appeals only from the three discrete categories of receivership orders specified in the statute, namely [1] orders appointing a receiver, [2] orders refusing to wind up a receivership, and [3] orders refusing to take steps to accomplish the purposes of winding up a receivership."  SEC v. Black, 163 F.3d 188, 195 (3d Cir. 1998).  PGI asserts that "[a]lthough the Court characterized Mr. Pichini as a 'guardian ad litem,' the court has in fact appointed a receiver to safeguard the Plan's property interest in its causes of action for damages."  Appellant's br. at 48 (footnote omitted).  We find this argument unpersuasive.

As is true for a determination of whether an order is appealable under section 1292(a)(1), the label used by the district court is not dispositive in a determination of the appealability of an order under section 1292(a)(2).  See United States v. Sylacauga Props., Inc., 323 F.2d 487, 490 (5th Cir. 1963) ("A receiver by any other name, or by no name, is still a receiver.").  In determining whether a receiver has been appointed, a court must take into account "the purposes of the receivership and the extent of the powers possible in the situation."  16 Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction 2d § 3925, at 220 (1996). In this regard, PGI recognizes that a receiver "take[s] possession of and preserves, pendent lite, and for the benefit of the party ultimately entitled to it, the fund or property in litigation."  FTC v. World Wide Factors, Ltd., 882 F.2d 344, 348 (9th Cir. 1989) (internal quotation marks and citation omitted).

The powers of the guardian ad litem in this case, however, are unlike the powers given the officers in the cases PGI cites in which courts have given receivers control over property and have tasked the receivers with preserving it.  Thus, in World Wide Factors, 882 F.2d at 348, a special master was, in reality, a receiver for certain purposes insofar as the master was ordered to account for and preserve the assets of the defendant to be available at time of trial in the event the defendant was found liable in the action.  In Sylacauga Properties, 323 F.2d at 490, in an action to foreclose a mortgage which included a provision for the appointment of a receiver during a foreclosure

proceeding, the court appointed a receiver to receive and collect rents and to preserve the property pending resolution of the dispute. Clearly, World Wide Factors and Sylacauga Properties differ from this case because we see no suggestion here that the Plan's assets must be "preserved" or otherwise managed by the guardian ad litem pending litigation.

It is, of course, significant that the district court narrowly circumscribed the role of the guardian ad litem, explaining in its November 30, 2004 order that it planned "[to] appoint a guardian ad litem who will replace the Gutmans and serve as administrator of the [P]lan for the limited purpose of this lawsuit," J.A. at 23 (emphasis added). The district court, in fact, promptly made the appointment. In asserting that it has suffered a "substantial intrusion" on its property rights in its cause of action, see Appellant's juris. br. at 19-20, PGI overstates the role of the guardian ad litem by seizing upon the word "replace" used by the district court and ignoring the phrase that expressly limits the role of the guardian to "the limited purpose of this lawsuit." J.A. at 23. The district court reiterated this express limitation in its subsequent orders of December 15, 2004, see J.A. at 31-32 (appointing Pichini "guardian ad litem for [the Plan] for the limited purpose of this lawsuit") (emphasis added), and of December 23, 2004, see J.A. at 35-36 (explaining that guardian ad litem does not replace the Gutmans as Plan administrators but merely "limits the ability of the Gutmans to direct the efforts of the Plan in this discrete lawsuit") (emphasis added). There is no question that the functions of the guardian ad litem in this case fall far short of those of a receiver for in each of its several orders the district court expressly limited the role of the guardian ad litem and otherwise did not disturb the Gutmans in their capacity as fiduciaries and administrators of the Plan.

Lastly, with respect to the applicability of section 1292(a)(2), we find unpersuasive PGI's argument that the guardian ad litem is, in fact, a receiver because he is "the recipient of a court-ordered transfer of another's property" in the form of PGI's cause of action. Appellant's br. at 48; Appellant's juris. br. at 19. We reject PGI's assertion that it is of no consequence that "in the usual case, the property is the subject matter of the litigation," whereas here, "the property is the cause of action itself." Appellant's juris. br. at 19 n.8. If we adopted PGI's expansive interpretation of what type of officer is a receiver, we effectively would eliminate the distinction between guardians ad litem and receivers, and, for that matter, between

14

fiduciaries and receivers. We have no intention of doing any such thing.[10]

We primarily have considered the appointment of the guardian

---

[10]In his dissent, Judge Irenas submits that we have jurisdiction over this appeal pursuant to 28 U.S.C. § 1292(a)(2) inasmuch as the so-called "guardian ad litem" is, in fact, a receiver. But rather than focusing on how or why the district court's orders amount to orders appointing a receiver, he devotes his analysis largely to challenging the accuracy of the label "guardian ad litem" as used by the district court. As we have made clear, we recognize that labels are certainly not dispositive and that a receiver by any name or no name is still a receiver. Thus, contrary to Judge Irenas' suggestion, we do not base our decision regarding the applicability, or lack thereof, of section 1292(a)(2), simply on some unconscious assumption arising from repeated use of the descriptive term employed by the district court. It well may be that the label "guardian ad litem" is less accurate than, for example, "trustee ad litem," the term the defendants used in their September 8, 2004 motion that resulted in Pichini's appointment, but simply removing the district court's "guardian ad litem" label does not render the appointee a receiver. Instead, as we explained, we are concerned primarily with the function and responsibilities of the "guardian ad litem" rather than the name used to refer to the position. To that end, we note that even though the guardian ad litem has control over the cause of action in this case, there remain myriad duties, functions and responsibilities related to managing the Plan's assets over which the guardian ad litem does not have any control. For this reason, the district court's orders do not amount to orders appointing a receiver for the Plan, whether or not the district court employed an accurate term in describing Pichini's position.

Finally, we note that Judge Irenas' analysis, and, in particular, his example of the benevolent grandmother trustee, misses the mark inasmuch as the analysis is based on the assumptions that the trustee grandmother is blameless and that the trust beneficiaries would not want to pursue a frivolous claim against their own trustee grandmother. But to assume the preferences of the Plan beneficiaries in this case, or those of the grandchildren in Judge Irenas' analogy, is to engage in speculation. The bottom line is that it remains unclear what claims, if any, the Plan beneficiaries would have or desire to pursue against the Plan administrators, and those are precisely the questions that the district court sought to put in the hands of an independent representative of the Plan rather than the conflicted Plan administrators.

15

ad litem in our section 1292(a)(2) discussion, but we have not overlooked PGI's contention that the scope of review under that section also includes the order disqualifying H&G. Of course, inasmuch as we do not find that section applicable even as to the appointment of the guardian ad litem, the section does not give us jurisdiction over an appeal from the disqualification of H&G. On this point we state only that it could not be argued seriously that in itself an order disqualifying an attorney has anything to do with a receivership. Consequently, the disqualification order could not possibly be within section 1292(a)(2).

## C. Collateral Order Doctrine

As a "further alternative ground for jurisdiction," PGI contends that the district court's orders appointing a guardian ad litem are immediately appealable under 28 U.S.C. § 1291 via the collateral order doctrine recognized in Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 69 S.Ct. 1221. Appellant's juris. br. at 28; see also Appellant's br. at 57-60.[11]   Under the collateral order doctrine, the authority of the courts of appeals in section 1291 to review "all final decisions," "includes appellate jurisdiction over a narrow class of decisions that do not terminate the litigation, but are sufficiently important and collateral to the merits that they should nonetheless be treated as final." Will v. Hallock,  __ U.S. __,126 S.Ct. 952, 956 (2006) (internal quotation marks omitted). For the collateral order doctrine to apply, the order in question must: "(1) conclusively determine the disputed question, (2) resolve an important issue completely separate from the merits of the action, and (3) be effectively unreviewable on appeal from a final judgment." Id. at 957 (internal quotation marks and citation omitted).

The three criteria that must be met for the collateral order doctrine to apply are "stringent," and the Supreme Court repeatedly has emphasized the doctrine's "modest scope." Id.; see also Digital Equip. Corp. v. Desktop Direct, Inc., 511 U.S. 863, 868, 114 S.Ct. 1992, 1996 (1994) ("[W]e have . . . repeatedly stressed that the

---

[11]PGI concedes that the orders disqualifying H&G are "not appealable under the collateral order doctrine," Appellant's br. at 57 n.35, as it must. See Richardson-Merrell, Inc. v. Koller, 472 U.S. 424, 438-39, 105 S.Ct. 2757, 2765 (1985) (holding that attorney disqualification orders in civil cases are not reviewable under the collateral order doctrine).

16

'narrow' exception should stay that way and never be allowed to swallow the general rule . . . that a party is entitled to a single appeal, to be deferred until final judgment has been entered[.]") (internal citation omitted). We have explained that a failure to meet any one of the three factors renders the doctrine inapplicable as a basis for appeal, no matter how compelling the other factors may be. Virgin Islands v. Hodge, 359 F.3d 312, 320 (3d Cir. 2004).

Clearly the collateral order doctrine is inapplicable here because the orders PGI challenges do not involve an issue completely separate from the merits of the action. On the contrary, the orders appointing a guardian ad litem for the Plan are enmeshed with the factual and legal issues comprising the third-party claim against the Plan administrators alleging breach of fiduciary duties owed to the Plan, and review of the orders would draw this court into the substance of the third-party complaint. In its order of November 30, 2004, the district court recognized as much, explaining that its denial of the third-party defendants' motion for summary judgment on the basis that genuine issues of material fact existed "concerning the Gutmans' control over the plan assets and investment decisions" was "significant to the disqualification issue." J.A. at 14.

PGI cites Collinsgru v. Palmyra Board of Education, 161 F.3d 225, 229 (3d Cir. 1998), to illustrate an order that raises an issue completely separate from the merits of the litigation, but Collinsgru is distinguishable and provides no support for PGI's position. In Collinsgru, we concluded that we had jurisdiction under the collateral order doctrine over an order dismissing a child's claims under the Individuals with Disabilities Education Act ("IDEA") after his parents were denied permission to represent him in the district court. Id. at 230. We explained that the issue of whether the appellants could represent their son in the district court was completely separate from the merits of the underlying IDEA claim alleging inappropriate denial of special education services. Id. But Collinsgru did not present any question of whether the parents adequately could represent the interests of their son. Moreover, the son did not have any claims against his parents, and the case did not otherwise raise the specter of conflicting interests between parents and child. Thus, the procedural context here renders Collinsgru inapposite.

We have not overlooked our discussion with respect to section 1292(a)(1) in which we pointed out that there is no connection between the relief PGI sought in bringing this action and the effect of

17

the district court orders from which PGI now appeals. That observation is not in any way inconsistent with our conclusion that the orders from which the appeal has been taken relate to the substantive issues raised by the third-party complaint. In this regard we point out that the Cohen v. Board of Trustees test indicates that the grant or denial of relief can be injunctive for purposes of section 1292(a)(1) only if it is designed to accord or protect some or all of the substantive relief sought in the action. Here, on the other hand, we are concerned with procedural steps leading to a substantive disposition rather than the disposition itself.

We realize that one of the criteria for finding the collateral order doctrine to be applicable is that the issue to be considered on the appeal is important. Nevertheless, neither the vagaries of this particular case nor the importance of rights purportedly compromised warrants us reaching a different result for the Supreme Court has "consistently eschewed a case-by-case approach to deciding whether an order is sufficiently collateral." Cunningham v. Hamilton County, 527 U.S. 198, 206, 119 S.Ct. 1915, 1921 (2000); see also Digital Equip. Corp., Inc., 511 U.S. at 868, 114 S.Ct. at 1996 ("[T]he issue of appealability under § 1291 is to be determined for the entire category to which a claim belongs . . . . "). The importance of the issue comes into consideration only if the issue is completely separate from the merits of the action, and here it is not separate. Thus, even if PGI somehow has a more compelling objection to the appointing of a guardian ad litem than the "ordinary" party seeking to appeal from an order making such an appointment, controlling precedent counsels against such a case-by-case application of the collateral order doctrine. See Bacher v. Allstate Ins. Co., 211 F.3d 52, 57 (3d Cir. 2000).

Finally, we see no reason to conclude that the orders appointing the guardian ad litem effectively will be unreviewable on appeal from a final judgment. In our view, the appointment of a substitute Plan representative to replace the otherwise conflicted Plan administrators is similar to an order disqualifying conflicted counsel, which is not appealable under the collateral order doctrine. See Richardson-Merrell, Inc. v. Kohler, 472 U.S. 424, 438-39, 105 S.Ct. 2757, 2765 (1985). But just as a party suffering an unsatisfactory judgment with substituted counsel can challenge an order disqualifying its earlier choice of counsel on an appeal following the entry of final judgment, so, too, will the Plan be able to appeal should it suffer an unsatisfactory judgment with a substitute Plan

18

representative.[12]  See Comuso v. Nat'l R.R. Passenger Corp., 267 F.3d 331, 336-37 (3d Cir. 2001).[13]

We recognize that sometimes essentially procedural orders can be effectively unreviewable on appeal from a final judgment, and that in such situations we have allowed earlier appeals predicating our jurisdiction on the collateral order doctrine.  Perhaps our leading case within that category is In re Ford Motor Co., 110 F.3d 954, 963 (1997), in which we allowed an immediate appeal from an order denying a motion seeking the protection from release on discovery of documents claimed to be protected by the attorney-client privilege or

---

[12]We do not imply that we have any opinion as to what an appropriate disposition would be on that appeal if it is ever taken.  We are only saying that the disqualification issue can be raised on an appeal after a final judgment.  We recognize that the guardian ad litem will control the litigation until final judgment and that we have indicated that we think it unlikely that the guardian ad litem would have filed a motion seeking reconsideration of the November 30, 2004 order that lead to his appointment.  See supra n.7.  Plainly, however, the situation would be different following unsuccessful litigation, and we do not doubt that if PGI is unsatisfied with the result in the district court and it attributes the poor result to the appointment of the guardian ad litem it will find a way to appeal.

[13]We need not address the issue of whether we have pendent appellate jurisdiction over the order disqualifying H&G because we do not have jurisdiction under the collateral order doctrine to review the orders resulting in the appointment of a guardian ad litem to which PGI has sought to tie its appeal of the disqualification order.  See Appellant's juris. br. at 41 ("In the event the Court . . . predicates jurisdiction upon the collateral order doctrine, plaintiff further submits that the Court should exercise pendent appellate jurisdiction over the disqualification of H&G.").  We have not discussed separately the appealability of the December 23, 2004 order denying reconsideration as PGI does not focus on the appealability of that order and does not suggest that it is appealable now even if the November 30 and December 15, 2004 orders are not now appealable.  Plainly, however, it is not now appealable, either in relationship to those orders or standing alone.  Furthermore, we have not discussed the appealability of the December 23, 2004 order denying PGI an extension of time to appeal as it is moot inasmuch as this appeal is timely.  In any event PGI acknowledges that it is not "independently appealable."  Appellant's juris. br. at 10 n.4.

19

as work product. We reached this result because a delay in allowing the appeal would have permitted the very disclosure that the appellant claimed applicable rules precluded. See also Whiting v. Lacara, 187 F.3d 317 (2d Cir. 1999) (per curiam) (jurisdiction order under collateral order doctrine for order denying attorney's motion to withdraw).

This case, however, is different from Ford Motor Co. It well may be that if this litigation goes ahead in the control of the guardian ad litem and replacement counsel and there is a reversal after final judgment, events in this litigation before the appeal could have some impact on later proceedings in the district court.[14] Yet such an effect is always possible following a reversal, but it differs in character from the situation in Ford Motor Co. where the right to be protected has been irretrievably lost when the materials are released.

## 2. Petition for Writ of Mandamus

Dismissal of PGI's interlocutory appeal for want of jurisdiction does not end our consideration of this case for, as we explained above, PGI also filed a petition for a writ of mandamus under the All Writs Act, 28 U.S.C. § 1651, which we have consolidated with its appeal. In brief, PGI asserts that we should issue a writ of mandamus to correct the district court's errors in replacing the Gutmans with a guardian ad litem and disqualifying H&G from representing PGI.

We have the power to issue a writ of mandamus pursuant to 28 U.S.C. § 1651(a), "in exceptional cases where the traditional bases for jurisdiction do not apply." In re Pasquariello, 16 F.3d 525, 528 (3d Cir. 1994). However, as we have explained, "mandamus is not a mere alternative to an appeal" and instead properly is viewed as a "safety valve in the final-judgment rule" providing a "drastic remedy . . . only in extraordinary circumstances in response to an act amounting to a

---

[14]We have no reason to believe that the guardian ad litem and the attorney he has selected, see supra n.9, will be any less diligent than Plan administrators and their attorneys would be in pursuing this litigation. Thus, we do not believe that if there is a reversal of the orders appointing the guardian ad litem the Plan will have been prejudiced by his prosecution of the case prior to the reversal. But if PGI believes otherwise we do not doubt that it will be able to advance its contentions on appeal. See supra n.12.

judicial usurpation of power." In re Briscoe, 448 F.3d 201, 211 (3d Cir. 2006) (internal quotation marks and citations omitted). But mandamus is an extraordinary remedy, and "[a]s the adjective 'extraordinary' implies . . . courts of appeals must be chary in exercising that power," so as to avoid having mandamus used as a substitute for appeal. In re Sch. Asbestos Litig., 977 F.2d 764, 772 (3d Cir. 1992). "Mandamus is disfavored because its broad use would threaten the policy against piecemeal appeals." Id. (citing Kerr v. United States Dist. Court, 426 U.S. 394, 403, 96 S.Ct. 2119, 2124 (1976)).

Courts have used mandamus "to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so." In re Sch. Asbestos Litig., 977 F.2d at 773 (quoting Roche v. Evaporated Milk Ass'n, 319 U.S. 21, 26, 63 S.Ct. 938, 941 (1943)). Mandamus may lie to prevent a district court from usurping a power that it lacks and to rectify clear abuses of discretion. Id.; see also Hahnemann Univ. Hosp. v. Edgar, 74 F.3d 456, 461 (3d Cir. 1996) (mandamus constitutes a "drastic remedy that a court should grant only in extraordinary circumstances in response to an act amounting to judicial usurpation of power") (internal quotation marks omitted). Three conditions must be satisfied for the issuance of a writ of mandamus: (1) there must be "no other adequate means to attain the relief sought;" (2) the right to issuance of the writ must be "clear and indisputable;" and (3) the issuing court, in the exercise of its discretion, must be satisfied that "the writ is appropriate under the circumstances." In re Briscoe, 448 F.3d at 212 (citing Cheney v. United States Dist. Court, 542 U.S. 367, 380-81, 124 S.Ct. 2576, 2587 (2004)).[15]

A. Appointment of Guardian ad litem

[15]We have noted on several occasions that "[w]here interlocutory appeal seems a practical but untried avenue, we will ordinarily deny a petition for mandamus." In re School Asbestos Litig., 977 F.2d at 774; see also In re Briscoe, 448 F.3d at 213 n.7. Although PGI tried unsuccessfully to obtain interlocutory appeal under 28 U.S.C. § 1292(a), certification for an interlocutory appeal under section 1292(b) remained an untried avenue. Nonetheless, given the district court's response in denying PGI's Motion for Extension of Time to File Appeal, it seems abundately clear that the district court would have denied such a request, rendering such review an "impractical avenue" for PGI to pursue. See In re Briscoe, 448 F.3d at 213 n.7.

21

PGI cannot demonstrate that its claimed right to a writ of mandamus is "clear and indisputable" with respect to the several orders replacing the Gutmans with a guardian ad litem for purposes of the litigation. PGI devotes a substantial portion of its briefs in this court to arguing that the district court improperly removed the Gutmans as Plan administrators absent any finding of substantial breach of fiduciary duty, as required by ERISA sections 409(a) and 502(a)(2), 29 U.S.C. §§ 1109(a), 1132(a)(2).[16] But PGI's argument is misplaced because the district court did not apply ERISA sections 409(a) and 502(a)(2) for the excellent reason that it did not remove a fiduciary, and thus the sections were not applicable. Our conclusion in this regard cannot be avoided because, despite PGI's persistent effort to recast the district court's orders as removing the Gutmans from their capacity as ERISA fiduciaries, the court made clear in express terms that the orders at issue did not remove them as Plan fiduciaries or otherwise disturb their role as Plan administrators. Instead, the orders merely suspended their role managing this litigation on behalf of the Plan. See, e.g., J.A. at 36 (clarifying that role of guardian ad litem is limited "to direct[ing] the efforts of the Plan in this discrete lawsuit") (emphasis added).

Moreover, PGI recognizes the limited nature of the appointment in its petition for mandamus, conceding that "[w]hile it is

---

[16] Section 409(a) of ERISA provides:

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary. A fiduciary may also be removed for a violation of section 1111 of this title.

29 U.S.C. § 1109(a). Section 502(a)(2) further provides that a civil action "for appropriate relief under section [409]," may be brought "by the Secretary, or by a participant, beneficiary or fiduciary." 29 U.S.C. § 1132(a)(2).

true that the Court did not remove the Gutmans completely from serving as members of the Plan's Administrative Committee, it is undeniable that it removed them in part." Pl.'s pet. at 25 (emphasis added). This so-called removal "in part" is a far cry from the removal of an ERISA fiduciary governed by section 409(a), particularly when, as here, the only administrative capacity affected is the Gutmans' ability to direct litigation in which their interests may conflict with those of the Plan they purport to represent. Section 409(a), by its terms, pertains to the sanction of removal in cases where a fiduciary breaches any of the responsibilities, obligations, or duties imposed by ERISA. See 29 U.S.C. § 1109(a). Here, however, the district court's appointment of a guardian ad litem was not a sanction at all but rather was a prophylactic measure to ensure adequate representation for the real party-in-interest, the Plan. Thus, the district court removed the Gutmans without finding that they breached their duties in any way.

As a leading treatise explains, federal courts always have had the power to appoint special representatives for persons whose general representative has conflicting interests. 6A Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d § 1570, at 498 (1990). Moreover, the common law of trusts, "which offers a starting point for analysis of ERISA unless it is inconsistent with the language of the statute, its structure, or its purposes," Harris Trust & Sav. Bank v. Salomon Smith Barney, Inc., 530 U.S. 238, 250, 120 S.Ct. 2180, 2189 (2000) (internal citations and quotation marks omitted), contemplates the appointment of an independent representative to replace a conflicted trustee. See, e.g., Getty v. Getty, 205 Cal. App. 3d 134, 140-42 (Cal. Ct. App. 1988) (affirming appointment of trustee ad litem with limited powers to conduct discrete litigation in lieu of conflicted trustee).

Nor can we dismiss as unfounded the district court's determination that a potential conflict of interest necessitates a special representative for the Plan in this litigation. In one noteworthy case, the Court of Appeals for the Fifth Circuit remarked that an ERISA fiduciary violates sections 404(a)(1) and 406(b)(2) as a matter of law by actively participating in the decision-making process concerning whether to pursue legal remedies against himself. Iron Workers Local No. 272 v. Bowen, 624 F.2d 1255, 1261 (5th Cir. 1980). This case presents obvious potential for a similar conflict of interest inasmuch as the Plan's administrators have been sued in their capacities as Plan fiduciaries in a third-party complaint, thus potentially compromising their ability to act "solely in the interest of the participants and

23

beneficiaries" of the Plan. 29 U.S.C. § 1104(a)(1). By appointing a guardian ad litem as a prophylactic measure, the district court sought to obviate a problem like that which occurred in Iron Workers Local No. 272. While the appointment of a guardian ad litem later may prove to have been an unnecessary precaution should the third-party claims against the Gutmans fail, the potential problems created by the Gutmans acting for PGI are such that, whatever we may conclude on a later appeal if there is one, PGI hardly can be said to possess a present "clear and indisputable" right to extraordinary mandamus relief with respect to the appointment.[17]

PGI raises various due process claims challenging the appointment of a guardian ad litem but its arguments in this respect lack merit, and we need not belabor them. With regard to procedural due process, PGI had adequate notice of and an opportunity to respond to the contemplated appointment of an independent representative for the Plan. Indeed, the district court when denying reconsideration of the orders appointing Pichini noted that PGI "did not respond in substance to the requests heard earlier . . . to disqualify counsel and appoint an independent party to represent the [P]lan," and instead chose to "attack[] the motives of the defendants and vehemently den[y] the existence of any conflict of interest." J.A. at 37.[18] Nor can we conclude that the appointment of a guardian ad litem violates substantive due process because we reject PGI's

_____

[17]PGI submits that "potential conflicts of interest on the part of plan administrators are so common as to be routine." Appellant's br. at 31. We note, however, that the case PGI cites as an example of this point, Smathers v. Multi-Tool, Inc., 298 F.3d 191, 197-99 (3d Cir. 2002), is inapposite. Smathers involved a former employee who sued to obtain benefits after an ERISA claims review fiduciary denied his request for benefits. We explained that "[t]he potential for a conflict of interests ar[ose] because [the employer] both fund[ed] and administer[ed] the welfare benefits plan." Id. at 197. While the case before us now involves a potential conflict of interest in an ERISA case, the similarity with Smathers ends there, for here we have a wholly different species within the genus of potential ERISA conflicts.

[18]The docket sheets indicate that PGI availed itself of its opportunity to file a submission in opposition to the motion to appoint a "trustee ad litem" and that the court conducted a hearing on the motion at which counsel for PGI and replacement counsel for the Gutmans addressed the court.

24

assertion that the appointment of a non-conflicted representative for the Plan was "conduct that shocks the conscience and violates the decencies of civilized conduct." County of Sacramento v. Lewis, 523 U.S. 833, 846, 118 S.Ct. 1708, 1717 (1998) (internal quotation marks and citation omitted); United Artists Theatre Circuit, Inc. v. Township of Warrington, 316 F.3d 392, 399-402 (3d Cir. 2002). In point of fact we regard the substantive due process argument as insubstantial.[19]

## B. Disqualification of H&G

PGI correctly notes that the Supreme Court has left open the door to mandamus relief in certain cases involving erroneous disqualification of counsel. See Richardson-Merrell, Inc., 472 U.S. at 435, 105 S.Ct. at 2763 (citing Firestone Tire & Rubber Co., 449 U.S. at 378 n.13, 101 S.Ct. at 676 n.13); see also In re Sandahl, 980 F.2d 1118, 1121-22 (9th Cir. 1992) (granting petition for writ of mandamus to vacate "patently erroneous" disqualification order). It does not follow, however, that merely because such an extraordinary writ may be available in some instances when counsel has been disqualified, that it is available here. Clearly, each petition for a writ of mandamus must be considered taking into account the circumstances surrounding the particular disqualification. Here, as with its challenge to the appointment of a guardian, PGI cannot demonstrate that its right to a writ of mandamus to override the disqualification of counsel is "clear and indisputable."

We have not overlooked a belated challenge that PGI makes in its reply brief to the defendants' standing to have sought disqualification of H&G. Inasmuch as PGI did not make this challenge in its opening brief, it has waived this argument. See United States v. Pelullo, 399 F.3d 197, 222 (3d Cir. 2005) ("It is well settled that an appellant's failure to identify or ague an issue in his opening brief constitutes waiver of that issue on appeal.").[20]

_____

[19]PGI in its brief acknowledges that the "shocks the conscience" standard is applicable to the substantive due process claim. Appellant's br. at 17 ("[T]he challenged actions of the [district court] satisfy the conscience-schocking test of Lewis and United Artists.").

[20]We also point out that as far as we are aware PGI did not raise the standing issue with respect to removal of H&G in the district court and that, in contrast to its belated attorney disqualification claim, in its opening brief in this court PGI extensively argued that defendants lacked

25

Turning to the merits of PGI's petition with respect to the complete removal of H&G, even if the district court should have applied Pa. R.P.C. 1.9, as PGI submits, PGI nonetheless cannot demonstrate that it is entitled to mandamus relief. Rule 1.9 prohibits a lawyer from taking a position adverse to a former client in the same or a related matter unless the former client consents after consultation. Here, it has not been shown that its former clients, the Gutmans, consented to H&G representing PGI let alone consented after appropriate consultation as required by Rule 1.9. Rather, portions of the record suggest just the opposite– both Alvin Gutman and James

standing to seek the Gutmans' removal. On the other hand, PGI in its opening brief in this court implied that defendants did have standing to bring the motion to disqualify H&G as it argued, citing a comment to Pa. R.P.C. 1.7, "that a disqualification motion filed by an opposing party 'should be viewed with caution . . . for it can be misused as a technique of harassment.'" Appellant's br. at 43. It is important to keep in mind that standing in this disqualification context is distinct from Article III standing, which, of course, is not subject to waiver, United States v. Hays, 515 U.S. 737, 742, 115 S.Ct. 2431, 2435 (1995), and is, instead, more akin to standing to assert rights under the Fourth Amendment, a challenge to which can be waived. See, e.g., United States v. Price, 54 F.3d 342, 346 (7th Cir. 1995); cf. Arbaugh v. Y&H Corp., __ U.S. __, 126 S.Ct. 1235, 1245 (2006) (holding that the Title VII numerosity requirement is not "jurisdictional" but rather is an element of plaintiff's claim an objection to which can be waived.). Moreover, several courts of appeals have jettisoned rigid standing rules to allow opposing counsel to move for disqualification even though the movant does not represent the aggrieved client, see, e.g., Kevlik v. Goldstein, 724 F.2d 844, 848 (1st Cir. 1984); CK-Brown & Williamson Tobacco Corp. v. Daniel Int'l Corp., 563 F.2d 671, 673 (5th Cir. 1977), a conclusion that is contemplated by both the American Bar Association's Model Rules of Professional Conduct. See Model Rules of Prof'l Conduct R. 1.7 cmt. (2002), and the Pennsylvania Rules of Professional Conduct, see Pa. R.P.C. 1.7 cmt. (2002) (stating that opposing counsel properly may raise disqualification "[w]here the conflict is such as clearly to call in question the fair or efficient administration of justice"). We seem not to have resolved the standing issue definitively. See In re: Congoleum Corp., 426 F.3d 675, 686-87 (3d Cir. 2005); In re Corn Derivatives Antitrust Litig., 748 F.2d 157, 161 (3d Cir. 1984). In view of PGI's belated effort to raise the issue, it will remain unresolved, and we will assume without deciding that defendants have standing to raise the disqualification issue.

Gutman in deposition testimony expressly denied that consent was given since, in their view, there was no potential conflict. See J.A. at 1318, 1324.[21] Moreover, inasmuch as we believe that the beneficiaries of the Plan have an interest in the Plan being represented separately from an attorney aligned or even previously aligned with the Gutmans, we would not grant a writ of mandamus to require the district court to undo the disqualification of H&G even if the Gutmans had consented to H&G representing PGI.[22]

In closing we make some final comments with respect to the denial of the petition for a writ of mandamus. First, we point out that in denying the petition we are not affirming the district court's orders. Rather, we are holding only that PGI's claim for issuance of the writ is not "clear and indisputable," and our holding is not intended to prejudice a later appeal, if there is one, after entry of final judgment. See In re Briscoe, 448 F.3d at 226. Second, our opinion should not be overread. We do not invite defendants in ERISA actions unjustifiably to bring third-party complaints in an attempt to manufacture circumstances justifying the appointment of a guardian ad litem for the plaintiff or the disqualification of the plaintiff's original counsel. We would expect that the district court would view such a third-party action with great caution and only in cases in which it is fully justified to do so will appoint a guardian ad litem for the plaintiff and remove its counsel.

## V. CONCLUSION

---

[21]Ironically, the deposition testimony expressly disclaiming any conflict and waiver was the product of notable revisions. For example, James Gutman originally testified that he signed a conflict waiver but later submitted an errata sheet changing his testimony to state that "[he] did not sign a waiver of conflict letter because there was no conflict." Compare J.A. 547-48 with J.A. at 1324.

[22]We are not suggesting, however, that we question either the Gutmans' or H&G's motives or integrity. What we are saying is that even with the Gutmans' consent to H&G representing PGI, PGI's right to mandamus relief would not be "clear and indisputable," and, in any event, it would not be appropriate in the circumstances of this case for us to grant the writ it seeks.

27

For the foregoing reasons, we will dismiss the appeal for want of jurisdiction and deny the petition for a writ of mandamus.

IRENAS, *Senior District Judge*, dissenting.


# I.


I respectfully dissent from Judge Greenberg's opinion to the extent that it holds we have no jurisdiction to hear Pressman-Gutman Co., Inc.'s ("PGI") appeal from the decision of the trial court appointing a purported guardian ad litem[23] to replace the members of the Administrative Committee of the PGI Profit Sharing Plan (the "Plan") for purposes of the conduct and control of this litigation. The trial judge's action did not have a sound basis in the law or the Federal Rules of Civil Procedure; it was based on a misapplication of the Pennsylvania Rules of Professional Conduct designed to govern the actions of lawyers acting in a legal capacity - not litigants; it destroyed the structural integrity of a trial which is based on the assumption that, where possible, a plaintiff should be able to press its, his or her own case;[24] and, most significantly, it erroneously labeled the designee as a guardian ad litem, which he is not, rather than as a receiver, which he is. Letting that decision stand creates the very realistic potential for significant mischief in future litigation. I would hear the appeal and reverse the order of the trial court, although in this dissent I will discuss the merits only to the extent needed to resolve the question of this Court's right to hear the controversy.

---

[23] In numerous places this dissent refers to the "guardian ad litem" appointed by the District Court. Use of this designation should not be deemed to indicate that the person designated by the District Court's order is, in fact, properly designated as a "guardian ad litem."

[24] "In all courts of United States the parties may plead and conduct their own cases personally or by counsel as, by the rules of such courts, respectively, are permitted to manage and conduct causes therein." 18 U.S.C. § 1654.

28

## II.

The facts and procedural history are ably set forth in the Majority Opinion and will only be briefly summarized here. PGI is the employer sponsor and named fiduciary of the Plan established for the benefit of the company's employees. Management of the Plan was vested in an Administrative Committee whose sole members were Alvin and James Gutman, PGI's Secretary and President, respectively. First Union National Bank ("First Union") and ForeFront Capital Advisors, LLC ("ForeFront") were retained to give investment advice to the Plan.[25] In its complaint, PGI alleges that it sustained losses as a result of First Union's breach of its fiduciary duty in making investment decisions. In addition to denying any breach of fiduciary duties, First Union filed a third-party complaint against the Gutmans seeking contribution or indemnity on the theory that they were solely or partly responsible for the losses sought to be recovered from First Union. On the Gutmans' motion for summary judgment the District Court denied relief and held that there were triable issues of fact.[26]

Following the denial of summary judgment, a lengthy procedural wrangling over possible conflicts of interest of PGI's lawyers ensued. The wrangling eventually spilled over to the issue of whether conflicts should bar the Gutmans from managing and controlling the litigation through their positions as the sole members of the Administrative

---

[25] The relationship between First Union and Forefront is not relevant to the discussion in this dissent and they will hereafter collectively be referred to as "First Union." The third-party complaint which has given rise to the current dispute was filed only by First Union, although the motion to replace the Gutmans on the Administrative Committee of the Plan was filed by ForeFront.

[26] The order, entered on May 13, 2004, contained five lines of text and a page and a half footnote. The legal discussion was cursory, and the factual discussion was mainly limited to the allegations of the parties. J.A. at 1770-72. However, it is not surprising that summary judgment was denied. Resolution of the motion would have likely involved myriad discussions and communications between the Gutmans and representatives of First Union - a resolution unsuited to a Rule 56 motion. This dissent expresses no opinion on the merits of the legal arguments raised by the Gutmans and denied by the District Judge in the summary judgment motion.

Committee. This procedural history is set forth in detail in the Majority Opinion. However, for purposes of this dissent, the case took an unacceptable procedural twist when the District Court entered an opinion and order on November 30, 2004, disqualifying the law firm of Hamburg & Golden from participating in the case in any fashion and removing the Gutmans (and perforce the plaintiff itself) from controlling the lawsuit by appointing "a guardian ad litem who will replace the Gutmans and serve as administrator of the plan for the limited purpose of the lawsuit. The guardian ad litem will, in turn, appoint new counsel for the plan." J.A. at 23. In an order dated December 14, 2004, the District Court appointed Louis Pichini, Esq. of Philadelphia as the guardian ad litem. J.A. at 31.

The trial court justified removal of the lawyers based on Rule 1.7 of the Pennsylvania Rules of Professional Conduct dealing with conflicts of interest. This discussion covers eleven pages of a fourteen page opinion (J.A. at 12-22), and I agree with the Majority Opinion that neither a direct appeal, an interlocutory appeal or mandamus relief is an appropriate route to challenge this ruling. However, the opinion devotes only one page (J.A. at 13) to discussing the separate decision to appoint a guardian ad litem. In a three line footnote the District Court finds authority for this draconian action in Fed R. Civ. P. 17(c) which provides for the appointment of a guardian ad litem "for an infant or incompetent person not otherwise represented." As authority for the action taken, Rule 17(c) is a dubious foundation. Nothing in the record suggests there was an infant or incompetent who could possibly be the guardian's ward. Although the trial court removed the Gutmans from the Administrative Committee, effectively wresting control of the litigation from plaintiff PGI itself, it did not actually identify the person for whom, in fact, the guardian ad litem was guardian.

The entire basis for this action appears to be contained in three sentences of the District Court's Opinion:

The Gutmans' duty to the plan includes seeking full compensation for the plan's losses. Because the Gutmans may be liable to the plan, the duty to the plan may include presenting claims against the Gutmans. However, because the Gutmans have an interest in protecting themselves from liability, the Gutmans are not likely to act against themselves for the benefit of the plan, and the plan's avenues of obtaining recovery may be adversely affected.

30

This rationale appears to be based on the conflict of interest provisions of Pennsylvania Rule of Professional Conduct 1.7 which applies only to lawyers who are acting in their roles as attorneys. Clearly the Gutmans, as officers of PGI and members of the Administrative Committee, and PGI itself, are acting as litigants, not lawyers. The persons presumably protected by this action are the employees of PGI who are the beneficiaries of the Plan, apart from any interests the Gutmans may hold.

Once appointed, the guardian ad litem necessarily will bring a direct action to recover Plan losses against the Gutmans. The net effect of that action is, of course, that the employee beneficiaries of the PGI Plan will be suing the principals and officers of their employer - a result which they may or may not desire. By the remarkable alchemy of the District Court's action, a fiduciary seeking to recover damages from an investment advisor is not only barred from pursuing the action, but finds himself being directly sued by the beneficiaries of the trust, who may not in the least be interested in following that course of action.[27]

Consider a grandmother who is the trustee of a trust established for the benefit of her many grandchildren, most of whom are over the age of eighteen. She hires an investment advisor who proceeds to recommend actions which cause significant losses to the trust. On advice of counsel the trust sues the investment advisor who follows the course of action followed by First Union: the investment advisor files a third-party complaint against the grandmother; the trial court replaces her with a guardian ad litem for the "limited" purpose of pursuing the litigation; and then she is promptly sued by the guardian for the same losses for which the suit was started in the first place. We now have the spectacle of the beneficiary grandchildren suing their grandmother who may have funded the trust in the first place,

_____

[27] If the guardian ad litem does not bring a direct action against the Gutmans to recover the Plan's losses, the District Court's rationale for his appointment disappears, since the principal basis for that action was the improbability that the Gutmans would cause PGI to seek a recovery against them. Ironically, as beneficiaries of the Plan the Gutmans would be paying for the suit against themselves since the District Court's December 14, 2004, order requires that the guardian ad litem be paid from the "Plan's trust fund." The other Plan beneficiaries are likewise forced to pay some of the cost of a suit against the Gutmans even if they have no desire to bring such a suit.

even though these grandchildren may have no desire to bring such an action.

Given the large number of entities controlled by persons deemed by law to be fiduciaries (trusts, estates, pension plans, profit sharing plans, various union health and benefit plans, corporations, etc.) and the proliferation of individuals and organizations who offer investment advice, it is easy to see how even meritorious actions could be derailed by the actions taken by the District Court. It may be that in certain situations a trial court may become concerned that a fiduciary bringing an action on behalf of an entity to recover losses from a third party might also be a proper target for recovery of those same losses. In that instance the court could easily require the fiduciary to provide notice of the litigation to the possibly affected beneficiaries, thereby permitting such persons to make their own decision as to whether they wish to intervene in the litigation to pursue claims against the fiduciary.[28]

It is respectfully suggested that if the Majority Opinion is allowed to stand, not only will it be allowing a legally unjustified action to go uncorrected, it will be a roadmap for investment advisors seeking to frustrate suits against them for breach of their duties to the fiduciaries who have placed their trust in them. However, the question now remains: Is there a legal basis for the Court of Appeals to remedy this wrong?

## III.

### A.

Strong jurisprudential considerations counsel that only final decisions of trial courts are appealable as of right to the Court of Appeals. Thus, 28 U.S.C. § 1291 grants a general right of appeal only from "final decisions of the district courts." Interlocutory appeals are authorized in certain limited circumstances under 28 U.S.C. § 1292, including orders granting or denying an injunction (§ 1292(a)(1)) and

---

[28] This dissent does not suggest that such a notice is required every time the defendant seeks contribution or indemnity from the fiduciary, or that even defendant's defeat of a summary judgment motion by plaintiff is sufficient to warrant this action.

orders appointing a receiver (§ 1292(a)(2)). PGI asserts that this Court has appellate jurisdiction under either of these provisions.

An appeal as of right under § 1292(a)(1) for trial court decisions on injunction applications requires that the challenged order grant or deny substantive relief sought by a litigant. There is agreement that this appeal does not involve a District Court determination that either grants or denies any of the substantive relief sought by any party to this litigation. Even if the District Court's action could be described as an injunction, the Majority Opinion correctly determines that § 1292(a)(1) does not vest this Court with appellate jurisdiction.

PGI argues that the appointment of a guardian ad litem to exercise the powers of the Plan's Administrative Committee is tantamount to appointing a receiver for the cause of action against First Union and the possible cause of action against the Gutmans. The Majority Opinion agrees that "[a] receiver by any other name, or by no name is still a receiver." United States v. Sylacauga Props., Inc., 323 F.2d 487, 490 (5th Cir. 1963). It further correctly notes that in determining whether someone is a receiver we consider "the purposes of the receivership and the extent of the powers possible in the situation," 16 Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction 2d § 3925, at 220 (1996) and whether the receiver "take[s] possession of and preserves, pendent lite, and for the benefit of party entitled to it, the fund or property in litigation," FTC v. World Wide Factors, Ltd., 882 F.2d 344, 348 (9th Cir. 1989)(internal quotation marks and citation omitted).

## B.

The Majority Opinion distinguishes the holdings in World Wide Factors and Sylacauga Properties by reasoning that these cases "differ from this case because we see no suggestion here that the Plan's assets must be 'preserved' or otherwise managed by the guardian ad litem pending litigation." Maj. Op. at 17. Judge Greenberg relies strongly on the word "limited" in the District Court's November 30, 2004, opinion which stated that the guardian ad litem replacing the Gutmans "will . . . serve as administrator of the [P]lan for the limited purpose of this lawsuit." J.A. at 23; Maj. Op. at 18. It is respectfully suggested that the Majority's reasoning does not withstand scrutiny.

33

An entity may own a wide variety of property interests: tangible personal property, real property, intangible personal property such as stocks or bonds, and unliquidated claims against third parties which will require litigation to realize the value of those claims. No one suggests that a litigation claim cannot be transferred to a receiver, nor can it be challenged that managing, preserving or realizing on that asset, may require more time and effort than managing other types of assets. Legal counsel must be found; there has to be intensive interaction between the claimant and counsel; the claimant has ongoing duties in discovery and in gathering evidence in support of the claim; and the claimant must assist counsel in developing litigation strategy. Every litigator knows that an engaged, energetic and cooperative client is an important ingredient to a successful litigation. When a receiver takes over responsibility for pursuing and monetizing a litigation claim against a third party, the burden of preserving and managing that asset is considerable indeed. In this case Mr. Pichini has actually been given total control over two assets of the Plan, the claim against First Union and the claim against the Gutmans to recover losses sustained by the Plan in its investment decisions.

The Majority first argues that the guardian ad litem cannot be a receiver "because we see no suggestion here that the Plan's assets must be 'preserved' or otherwise managed by the guardian ad litem pending litigation." Maj. Op. at 17. There are actually two arguments apparently buried in this short sentence. First, the reference to the Plan's "assets" in the plural suggests that the guardian ad litem is less than a receiver because he has no responsibility for any Plan asset other than the claims against First Union and the Gutmans. Nobody has pointed to any authority for the proposition that the transfer of less than all the assets of a particular entity to a third party for management and preservation somehow precludes that third party from legally being a receiver. The issue is not the volume or character of the assets not transferred, but rather the responsibilities of that third party with respect to the assets which are in fact transferred.

Arguing that the guardian ad litem has no duty to preserve or manage the assets which were in fact transferred to him is unfathomable. As noted above, preserving and managing two litigation claims can be extraordinarily difficult and often involves a high level of skill and energy. By replacing the Gutmans on the Plan's Administrative Committee for purposes of pursuing the claims against First Union and the Gutmans, the District Court has divested PGI, through the

34

Plan's chosen Administrative Committee, of any role in managing or preserving the litigation claims (which includes, as well, the right not to pursue a particular claim in court). The Plan cannot sell, transfer or hypothecate its interest in the claims; it cannot choose to abandon or settle those claims; it cannot select its own counsel; and it cannot determine litigation strategy with its chosen counsel.[29] Only the guardian ad litem - the receiver- can take these steps to manage and preserve the assets within its control.

As noted above, the Majority Opinion also points to the wording of the order providing for a guardian ad litem "for the limited purposes of this lawsuit." That the appointment of the "guardian ad litem" may be temporally limited to the duration of the lawsuit, is hardly relevant the issue of whether such guardian is in fact a receiver, since the appointment of almost all receivers is for a designated period. Nothing in the facts of this particular case or the order of the District Court limits the power or authority of the appointed guardian ad litem in preserving, managing or monetizing the assets entrusted to his stewardship.

## C.

The District Court used the term "guardian ad litem" to describe the individual who was to assume the role of the Gutmans on the Administrative Committee with respect to the claims against either First Union or the Gutmans to recover investment losses. The

---

[29] It is spurious to argue that the Gutmans can still fully cooperate with the guardian ad litem in pursuing the claims against the First Union. The whole premise of the American system of adversary litigation is that a litigant can interact with counsel completely loyal to the litigant. Just as the District Court assumed that that PGI would not pursue the Gutmans to recover Plan losses, it is equally foolish to assume that the Gutmans can fully cooperate with the guardian ad litem or his attorney who were appointed for the express purpose of pursuing claims against the Gutmans. When the Plan's designated Administrative Committee was running the litigation, the Gutmans' communications with counsel presumably would have been protected the attorney client privilege. It is, to put it mildly, a murky issue as to whether the Gutmans' communications with counsel for the guardian ad litem would be similarly protected.

35

Majority Opinion uses that term throughout. So does the dissent. If a particular descriptive term is used often enough, we may unconsciously assume that it is being used accurately. The Majority Opinion makes one final argument to buttress its contention that the District Court's appointee is not a receiver:

If we adopted PGI's expansive interpretation of what type of officer is a receiver, we effectively would eliminate the distinction between guardian ad litem and receivers, and, for that matter, between fiduciaries and receivers. We have no intention of doing such thing.

Maj. Op. at 19. The unstated premise of this argument is that Mr. Pichini, who was designated by the District Court to replace the Gutmans on the Plan's Administrative Committee, is in fact a "guardian ad litem." That he was given this designation by the trial court is hardly dispositive.

A "guardian" is defined as "One who has the legal authority and duty to care for another's person or property, esp. because of the other's infancy, incapacity, or disability." Black's Law Dictionary (8th ed. 2004). The person protected, the "ward," is defined as "A person, usu. a minor, who is under a guardian's charge or protection." Id. A "guardian ad litem" is a special type of guardian "usu. a lawyer, appointed by the court to appear in a lawsuit on behalf of the incompetent or minor party." Id. "Ad litem" is translated from the Latin as "for the specific lawsuit." Richard A. Branyon, Latin Phrases & Quotations (Hippocrene Books, 1994) at 6. Fed. R. Civ. P. 17(c) uses similar language: "An infant or incompetent person who does not have a duly appointed representative may sue by . . . a guardian ad litem. The court shall appoint a guardian ad litem for an infant or incompetent person not otherwise represented in an action or shall make such other order as it deems proper for the protection of the infant or incompetent person." The question is: exactly for whom was Mr. Pichini appointed as guardian ad litem?

First we can eliminate the Gutmans as suspects. Guardians ad litem protect their wards - they do not investigate and sue them. We turn next to PGI, the named plaintiff, or the Plan itself. Neither PGI nor the Plan is an infant or an incompetent. More generally, the wards of guardians ad litem are natural persons, not corporations or other legal entities. Legal entities have receivers - not guardians. Indeed, the phrase in Rule 17(c), "infant or incompetent person" also appears in Fed. R. Civ. P. 4(e) where reference is made to "an individual . . .

36

other than an infant or an incompetent person . . ." There are literally thousands and thousands of state and federal cases dealing in one way or another with guardians ad litem. While it would take hubris to make a statement about every single case, one would be hard-pressed to find a case in which a guardian ad litem was appointed to represent a corporation or other legally created entity.

There remains one more candidate for Mr. Pichini's ward: the employees of PGI who are beneficiaries of the Plan, other than the Gutmans, presumably the parties the District Court was trying to protect. There is no evidence in the record that these employees are minors or incompetents. Even less do we know whether they are aware of the litigation or whether they have any interest in pursuing the Gutmans for losses sustained by the Plan. Even if they were unhappy with the Gutman stewardship of the Plan, there is no indication of whether they want to pay part of the cost of suing the Gutmans by having the Plan pay a guardian and lawyer in part from their share of the Plan assets. Guardians ad litem are appointed to make litigation decisions for those who by reason of infancy or mental incapacity cannot make those decisions themselves. PGI's employees meet neither of these criteria.

At root this case involves a profit sharing Plan which sustained market or trading losses and may have two causes of action: one against the retained outside investment advisor; the other against the two administrators of the Plan. It chose to pursue only the cause against the outside advisor. Based on the notion that the Gutmans had a conflict of interest, the trial judge transferred those to assets to Mr. Pichini for the purpose of realizing whatever monetary value they may have. The District Court may have called him a guardian ad litem, but in truth he was a receiver for the Plan with respect to those two choses in action. That Mr. Pichini was not the receiver of <u>all</u> the Plan's assets is of no moment. I am aware of no authority for the proposition that unless a proposed receiver takes control of every asset owned by a particular party he cannot be deemed a receiver. The proper inquiry looks to his powers with respect to the assets he does control - not the assets he does not control.

Footnote 10 of the Majority Opinion takes the dissent to task for focusing on the label "guardian ad litem," rather than on the "how or why of the district court's orders ." Judge Greenberg suggests that: "It well may be that the label 'guardian ad litem' is less accurate than, for example, 'trustee ad litem'." This is, to put it mildly, a remarkable

statement. "Receiver" is almost a synonym for "trustee." Both hold, manage and preserve property for the benefit of third parties. Adding the phrase "ad litem" is not relevant since, as noted earlier, this translates as "for the specific lawsuit," which defines only the duration of the trusteeship or receivership. If, as Judge Greenberg proffers, we can call Mr. Pichini a "trustee ad litem", it is tantamount to conceding that we can also call him a "receiver ad litem" - which is certainly a receiver for purposes of § 1292(a)(2).[30]

What's in a name? that which we call a rose

By any other name would smell as sweet.

*The Tragedy of Romeo and Juliet,* Act II, Scene 1, lines 90-91, The Yale Shakespeare (Barnes & Noble Books, 1993); See also discussion in last ¶ of Part III, A., supra.


### D.

I do not join the portions of the Majority Opinion dealing with the collateral order doctrine or mandamus, because they are based on the premise that the District Court designated a guardian ad litem when in fact, in my view as outlined above, this is not an accurate description. In a case where there is an interlocutory challenge to the appointment of a real guardian ad litem on the basis, for instance, that the ward is neither a minor nor incompetent, it would appear that the collateral order doctrine would provide a basis for an immediate appeal. See Richards v. Duke University, No. 05-1170, 2006 WL 162652 (3d Cir. January 23, 2006) (non-precedential).


### IV.

There are countless individuals who act as fiduciaries for entities they operate or control. In their role as both managers of the entities and

---

[30] The other arguments in footnote 10 have been dealt with elsewhere in this opinion, particularly the argument that because the Plan has assets which were not transferred to Mr. Pichini, he is somehow not a receiver of the assets which were entrusted to his care.

fiduciaries they may seek to recover from third parties losses sustained by their entities. In many of these instances there may be a theory that the fiduciary is also responsible for all or part of the same losses. While this scenario may cause conflict of interest problems for lawyers who represent more than one interested party, ethics rules governing lawyers do not govern the conduct of persons acting as litigants. If every charge by a defendant that the plaintiff fiduciary was, in fact a partial or complete cause of the loss could result in the appointment of a receiver to pursue the third party claim and also sue the fiduciary, the defendant will have won a huge tactical victory without actually proving anything.

By turning the plaintiff's fiduciary into another defendant, the ability of the fiduciary to cooperate with and help plaintiff prevail against the original defendant is severely impaired. It is precisely this type of serious and potentially irreparable harm that may be avoided by allowing interlocutory appeals pursuant to § 1292(a)(2). *See* Federal Practice and Procedure: Jurisdiction 2d § 3925 ("A receivership can drastically curtail existing property rights, foreclosing independent action and decision in irreparable ways.").

When the District Court appointed Mr. Pichini to serve as the Administrative Committee of the Plan and hire his own counsel to chase both First Union and the Gutmans, it effectively appointed him a receiver of those causes of action and gave him the exclusive authority to manage and preserve those assets. The decision appointing Mr. Pichini is thus properly appealable under 18 U.S.C. § 1292(a)(2). Therefore, I respectfully dissent from the Majority Opinion which holds otherwise.